586 A.2d 1043

**PATTERSON–KELLY COMPANY, Petitioner,**

**v.**

**WORKMEN'S COMPENSATION APPEAL BOARD (WOODROW), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Dec. 7, 1990.

Decided Feb. 11, 1991.

568

Edward H. Feege, with him, Jeffrey M. Zimskind, Duane, Morris & Heckscher, Lehigh Valley, for petitioner.

C. Daniel Higgins, Stroudsburg, for respondent.

Before McGINLEY and KELLEY, JJ., and NARICK, Senior Judge.

NARICK, Senior Judge.

Patterson–Kelly Company (Employer) appeals a decision by the Workmen's Compensation Appeal Board (Board) affirming, but modifying, the decision of the referee awarding Frank A. Woodrow (Claimant) total disability benefits effective October 31, 1982 until the date of his death, August 15, 1986. We affirm.

The facts are as follows. Claimant sustained a work-related back injury on February 13, 1980. On February 18, 1980,[1] Dr. Frank Dracos, an orthopedic surgeon, treated Claimant and "diagnosed his injury as an acute lumbosacral strain with sciatic nerve root irritation." Finding of Fact No. 7. Employer paid Claimant total disability benefits at the rate of $242.00 per week for that injury. On June 20, 1980, Claimant signed a final receipt.

From February 13, 1980 to October 31, 1982, Claimant was either totally unable to work or able to work part-time only. When he was able to work, it was only for three to five hours per day.

After the February 13, 1980 injury, Dr. Dracos treated Claimant at least two times before Pocono Hospital admitted him on March 28, 1980. Claimant remained there until April 4, 1980.

On February 21, 1981, Dr. Dracos again recommended Claimant be hospitalized, this time until March 5, 1981. He found that Claimant's "condition 'had gotten worse' requiring further hospitalization." Finding of Fact No. 9.

Dr. Dracos treated Claimant on at least nine occasions between the February 21, 1981 hospitalization and September 1, 1982. On September 1, 1982, Dr. Dracos examined Claimant again and confirmed that he had only a very limited capacity to do sedentary work.

1. Even though the referee stated that this date was February 18, 1986, it is clear from the other findings that the reference to 1986 is an error.

After Dr. Dracos' September 1, 1982 affirmance of Claimant's continuing disability, Claimant elected early retirement and Employer's personnel director submitted Claimant's application for early retirement to the insurance company on October 25, 1982.[2] The effective date was January 1, 1983.

On October 31, 1982, Claimant again injured his back at home while attempting to move a flower pot in his garage. Claimant was totally disabled and unable to work thereafter.

According to the latest of several supplemental agreements, dated June 10, 1983, Employer was to pay Claimant partial disability benefits at a rate of $143.74 per week after January 3, 1983 for 427³/₇ weeks. We emphasize that the June 10, 1983 supplemental agreement came after Dr. Dracos' September 1, 1982 affirmance of Claimant's continuing disability and after Claimant's October 31, 1982 injury.

On March 26, 1984, Claimant filed a petition to review that compensation agreement under Section 413 of The Pennsylvania Workmen's Compensation Act (Act).[3] Therein, Claimant sought reinstatement of full compensation as of October 31, 1982, the date of his injury at home.

The referee concluded that (1) Claimant was totally disabled as a result of the October 31, 1982 injury; (2) any increase in disability as a result of the October injury was related to the February 13, 1980 work-related injury; and (3) Claimant established by unequivocal medical testimony that there was a causal relationship between the original injury and the later disability.

The basis for the referee's findings was the testimony of Dr. Dracos. The referee chose to find the testimony of Dr. Joseph F. McMahon, Employer's medical witness, not credible.

2. Claimant testified that Employer had previously denied his request for disability retirement. The referee, however, did not make a finding on that point.

3. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 772.

The Board affirmed the referee's reinstatement of total compensation. It deleted, however, the credit given to Employer by the referee for early retirement benefits.[4]

There are two issues before us. The first is whether the referee's finding that Claimant's disability as a result of his injury at home on October 31, 1982, is related to his February 13, 1980 work-related injury is supported by substantial evidence. The second is whether Claimant's voluntary retirement on January 1, 1983, precludes his eligibility for the award of total disability benefits as of that date.

■ Both the Pennsylvania Supreme Court and this Court have held that unequivocal medical testimony is required where there is no obvious causal connection between the work-related injury and a subsequent disability. *Lewis v. Workmen's Compensation Appeal Board,* 508 Pa. 360, 498 A.2d 800 (1985). Because such a determination is a conclusion of law, it is fully reviewable by this Court. *Kaminski v. Workmen's Compensation Appeal Board (The Dobbs House, Inc.),* 114 Pa.Commonwealth Ct. 484, 539 A.2d 34 (1988), *petition for allowance of appeal denied,* 520 Pa. 609, 553 A.2d 970 (1988).

■ Employer contends that Dr. Dracos' testimony is equivocal as to causation because of the following exchange between counsel for Claimant and the doctor.

Q. Is that inability to return to work, is that in your professional opinion causedly [sic] related to his original injury on February 13, 1980?

A. I can't answer that. I cannot say that he is 100 percent totally disabled because of the original incident; and the reason is that he was partially disabled prior to the garage [flower pot] incident.

N.T. at 20–21, deposition of Dr. Dracos.

Notwithstanding the somewhat ambiguous nature of the above-quoted response by Dr. Dracos, there are various other passages in the record that pertain to causation and

---

**4.** Employer no longer wishes to pursue the issue of whether it is entitled to a credit for early retirement benefits.

would have led to the finding of unequivocality. In response to a question by Claimant's counsel as to whether the October 1982 injury was related to the February 1980 injury, Dr. Dracos replied: "Yes, because he was partially injured when he bent over to move this pot or whatever he did. So as a result he ended up with a total problem." N.T. at 39–40, deposition of Dr. Dracos.

In another passage, Dr. Dracos testified that "[m]y opinion is that the two conditions are related. They're related in the sense that he did not have a normal back as he had prior to his original incident; and then when he stressed his back under those occasions it caused an acute exacerbation." N.T. at 16, deposition of Dr. Dracos.

In an equivocality determination, we must review the medical evidence as a whole and a final decision "should not rest upon a few words taken out of the context of the entire testimony." *Lewis*, 508 Pa. at 367, 498 A.2d at 803. Therefore, we agree that when giving Claimant as the party who prevailed below all favorable inferences that can be drawn from the evidence, Dr. Dracos' medical testimony is unequivocal. *E.g., Krumins Roofing & Siding v. Workmen's Compensation Appeal Board (Libby)*, 133 Pa.Commonwealth Ct. 211, 575 A.2d 656 (1990).

■ Secondly, Employer argues that Claimant's voluntary retirement on January 1, 1983 precludes the payment of compensation benefits after that date because Claimant suffered no loss of earning power. In support of that argument, Employer cites *Dugan v. Workmen's Compensation Appeal Board (Fuller Co.)*, 131 Pa.Commonwealth Ct. 218, 569 A.2d 1038 (1990). In *Dugan*, the key issue was whether the claimant suffered a wage loss after his voluntary retirement. We concluded that benefits were properly suspended as of May 24, 1986, the date of his retirement.

The *Dugan* claimant suffered a myocardial infarction on September 11, 1984. The referee found that he was totally disabled from September 12, 1984 to June 16, 1985. The fact-finder also found that the claimant considered himself

permanently retired and that he had no intentions of seeking work of any kind.[5]

We agreed that benefits were properly suspended as of the date of Mr. Dugan's retirement because "[c]laimant's loss of earnings was caused by his voluntary retirement and withdrawal from the labor market." Claimant's loss of earnings was not occasioned by his injury. *Id.*, 131 Pa.Commonwealth Ct. at 224, 569 A.2d at 1041.

Here, there was no testimony that Claimant considered himself permanently retired. On the contrary, Claimant testified that he intended to obtain another job in order to supplement his social security payments.[6] Therefore, *Dugan* is distinguishable.

In a recent workmen's compensation case, we remanded in order for the fact-finder to make findings in regard to the role claimant's injury played in his early retirement. *McAfee v. Workmen's Compensation Appeal Board (Allegheny General Hospital)*, 134 Pa.Commonwealth Ct. 562, 579 A.2d 1363 (1990). The *McAfee* claimant suffered a lower back injury on July 19, 1978. On August 21, 1978, his benefits were suspended when he returned to light-duty work with the employer. The claimant retired on October 1, 1985. After retiring, the claimant filed a reinstatement petition, seeking a reinstatement of total disability benefits. He claimed that his back injury had caused him to opt for early retirement. The referee dismissed his reinstatement petition and the Board affirmed. We remanded, however, for further findings of fact in regard to (1) the claimant's ability to perform the light-duty work provided by the employer; (2) the credibility of witnesses; and (3) the role a March 28, 1984 accident at work played in the claimant's decision to retire. In footnote seven, we noted that "[o]bviously, if Claimant retired because of his back injury, Claim-

5. We noted that, contrary to the general rule, "[a]n employer need not prove the availability of employment, which a claimant has no intention of pursuing." *Dugan*, 131 Pa.Commonwealth Ct. at 222, 569 A.2d at 1040.

6. We note that the fact-finder made no finding as to Claimant's intentions.

ant suffered a loss of earning power." *Id.*, 134 Pa. Commonwealth Ct. at 569, n. 7, 579 A.2d at 1367, n. 7.

Even though we remanded, we noted that:

in a reinstatement proceeding where a claimant petitions to have a suspension lifted, the claimant's only burden is to show that while his disability has continued, his loss of earnings has recurred. Once the claimant has sustained this burden, the burden then shifts to the employer who must either continue compensation payments or demonstrate the existence of a selective type job that the claimant is able to perform.

*Id.*, 134 Pa.Commonwealth Ct. at 569, 579 A.2d at 1367.

Here, the continuance of Claimant's disability is clear. In addition to the June 10, 1983 supplemental agreement, which provided for disability payments past the date of retirement, the fact-finder found that Claimant was totally disabled as a result of the October 31, 1982 injury. There is ample evidence in the record to support that finding.

In regard to the second prong of the *McAfee* standard, loss of earnings, the referee found that Claimant was unable to do work of any kind after the October 31, 1982 injury. He was totally disabled as a result of that incident.

Accordingly, the burden shifted to Employer.[7] Employer presented no evidence that any job existed that Claimant could perform.

For these reasons, we affirm.

## ORDER

AND NOW, this 11th day of February, 1991, the order of the Workmen's Compensation Appeal Board in the above-captioned matter is affirmed.

---

7. Unlike the claimant in *Dugan,* Claimant here and the *McAfee* claimant made no unequivocal statements in regard to their intentions not to seek further employment. Therefore, the burdens as enunciated in *McAfee* apply here.