611 A.2d 352

**NABISCO, Petitioner,**

v.

**WORKMEN'S COMPENSATION APPEAL BOARD (KELLY), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs April 24, 1992.

Decided June 3, 1992.

Stephen J. Harlen, for petitioner.

Christina J. Barbieri, for respondent.

Before PALLADINO, and PELLEGRINI, JJ., and NARICK, Senior Judge.

PELLEGRINI, Judge.

Nabisco (Employer) appeals from an order of the Workmen's Compensation Appeal Board (Board) affirming the referee's decision to award workers' compensation benefits to Harry Kelly (Claimant).

Claimant worked for Employer for twenty-two years as a mechanic. His work duties required him to climb over, under

and around machines to perform repair work and installation of new machinery. These duties caused Claimant to move his neck into various awkward positions in tight-fitting spaces.

On October 6, 1987, Claimant was repairing a conveyor belt and struck his head twice on the machinery.[1] Claimant continued to work for Employer after his work accident but he experienced difficulty in sleeping and he was compelled to alter his work duties with the help of co-workers because his neck pain became worse. On June 2, 1988, Claimant opted to take early retirement as of September 1, 1988 at which time he would begin receiving a pension. On July 27, 1988, Claimant filed a claim petition alleging a work-related injury to his cervical spine and Employer filed a timely answer denying all of Claimant's material allegations.[2]

At a hearing before a referee, Claimant testified that he had relocated to Florida in May 1989, and that although he sought employment to supplement his pension, he was unable to find any positions that would accommodate his physical condition. The referee determined that while Claimant had retired from his duties with Employer, Claimant had not removed himself from the work force and that Claimant had sustained a loss of earnings since September 1, 1988 due to his October 6, 1987 work injury. Accordingly, the referee awarded Claimant benefits in the amount of $361.00 per week.

Employer appealed the referee's decision, contending that Claimant's benefits should be suspended. The Board, however, concluded that the referee's findings as to work availability were supported by substantial evidence and that substantial evidence supported the referee's conclusion that Claimant did not intend to leave the work force permanently. Employer's appeal to this Court followed.[3]

1. This was not the first occasion in which Claimant suffered a work-related injury. In 1978, he sustained an injury to his neck for which he underwent surgery in 1980.

2. Employer, however, is not challenging Claimant's work disability.

3. Our scope of review is limited to determining whether constitutional rights have been violated, whether an error of law was committed or whether any finding of fact necessary to support the decision is not supported by substantial evidence. Section 704 of the Administrative

■   Employer contends that the referee erred in failing to modify Claimant's benefits under *Kachinski v. Workmen's Compensation Appeal Board (Vepco Construction Co.)*, 516 Pa. 240, 532 A.2d 374 (1987) because substantial evidence establishes that Claimant is capable of light-duty work and because Employer presented evidence of suitable available positions which Claimant failed to pursue. In *Kachinski*, the Pennsylvania Supreme Court set forth guidelines for determining whether work is "available" to a claimant, stating:

> It is enough that the employer produce medical evidence describing the claimant's capabilities, and vocational evidence classifying the job, *e.g.*, whether it is light work, sedentary work, etc., along with a basic description of the job in question. *From such evidence it will be up to the referee to determine whether the claimant can perform the job in question....* Thereafter, the decision of the referee will be reviewable as a finding of fact.
>
> . . . .
>
> 1.  The employer who seeks to modify a claimant's benefits on the basis that he has recovered some or all of his ability must first produce medical evidence of a change in condition.
>
> 2.  The employer must then produce evidence of a referral (or referrals) to a then open job (or jobs), which fits in the occupational category for which the claimant has been given medical clearance, *e.g.*, light work, sedentary work, etc.
>
> 3.  The claimant must then demonstrate that he has in good faith followed through on the job referral(s).
>
> 4.  If the referral fails to result in a job then claimant's benefits should continue. (Citation omitted; emphasis added).

516 Pa. at 251–52, 532 A.2d at 379–80. To be "available," the job referrals must be within the physical capacities specified by the medical witness whose testimony is accepted by the referee. *Roadway Express, Inc. v. Workmen's Compensation*

Agency Law, 2 Pa.C.S. § 704; *McMahon v. Workmen's Compensation Appeal Board (Volkswagen of America)*, 135 Pa.Commonwealth Ct. 1, 581 A.2d 678 (1988).

*Appeal Board (Lewis),* 113 Pa.Commonwealth Ct. 230, 536 A.2d 870 (1988). The claimant must also be notified that he or she has been released to return to a certain category of work. *Four-Way Construction Company v. Workmen's Compensation Appeal Board (Snyder),* 113 Pa.Commonwealth Ct. 235, 536 A.2d 873 (1988). However, each job referral need not be separately evaluated once guidelines for the type of work a claimant is capable of performing are established. *Associated Plumbing & Heating v. Workmen's Compensation Appeal Board (Hartzog),* 126 Pa.Commonwealth Ct. 618, 560 A.2d 865 (1989).

In the present appeal, Employer produced evidence that it referred three job positions to Claimant which were within an occupational category for which he was given medical clearance. Jane Buboltz, a vocational counsellor, testified that while Claimant's age and location made it difficult for her to locate employment for him, R.R. 119a–120a, she had found three available positions. R.R. 121a. The first position involved working as a salesperson in the pesticide and fertilizer department of a hardware store located 20 miles from Claimant's residence, R.R. 122a, and Buboltz personally observed the duties of this position. Claimant testified that he went to the hardware store several times to study the operation and noted that there were few salespeople present. R.R. 155a–156a. He further stated that he was told at his interview that he would be called upon to assist in loading and to climb to shelves 12 feet high to get items for customers. R.R. 158a. While Buboltz testified that the store manager told her that Claimant stated he did not want the job, R.R. 125a–126a, Claimant testified that he and the interviewer agreed that Claimant would not be able to perform the position, R.R. 159a, because part of the job duties required overhead lifting of objects weighing more than 20 pounds. R.R. 134a.

The second job was a position with Pinkerton Security. The job would be located 20 miles from Claimant's home, R.R. 126a, and involved checking cars that came in and out of a private residential community and driving a golf cart around to check gate security and parking assignments. R.R. 127a.

Claimant applied for the position and passed a preliminary written test as required by Florida law. Employer then presented evidence that Claimant turned down the job because of the added mileage that he would put on his car. R.R. 127a–129a. Claimant, however, testified that he did not hear anything from Pinkerton after he was told he would be called back. R.R. 160a.

The third position was security guard job with Wackenhut Security. The vocational expert testified that she did not have a description for this position and had never seen it performed. Claimant testified that he applied for the job but was told he would not be given the position until he took a course for which he would have to pay. R.R. 164a. He was also concerned about the fact that Wackenhut would not reveal the location of his assignment or a description of his duties. R.R. 164a.

It is within the referee's power to determine whether a job referral is within a claimant's physical limitations. *Kachinski*, 516 Pa. at 251, 532 A.2d at 379. Here, the referee found that the testimony of Employer's vocational expert failed to satisfy the evidentiary requirements of *Kachinski*. With regard to the first and second job referrals, there was a conflict in the evidence which was for the referee to resolve. *Town & Country Fine Furniture v. Workmen's Compensation Appeal Board (Cooley)*, 115 Pa.Commonwealth Ct. 484, 489, 540 A.2d 638, 640 (1988). The referee, finding Claimant's testimony to be more credible, determined that these job referrals were not suitable for Claimant. With regard to the third job referral, however, there was insufficient evidence as to the nature of the job's duties and location in order for the referee to determine whether it was suitable for Claimant. The third job, therefore, was simply not available. We will not disturb the referee's findings because they are supported by substantial evidence.

Employer also contends that the referee erred in failing to suspend Claimant's benefits from September 1, 1988, the date of Claimant's retirement, to May 1989, when Claim-

ant relocated to Florida and began seeking employment. Employer asserts that during this period, Claimant voluntarily withdrew from the labor market and did not incur a loss of earnings. In support of its contention, Employer cites *Dugan v. Workmen's Compensation Appeal Board (Fuller Company)*, 131 Pa.Commonwealth Ct. 218, 569 A.2d 1038 (1990).

In *Dugan,* the referee granted a claim petition but suspended benefits based on the retired claimant's testimony that he would no longer seek employment. This Court held that an employer need not prove job availability pursuant to *Kachinski* "where a claimant states unequivocally that he has no intention of seeking future employment." 131 Pa.Commonwealth Ct. at 222, 569 A.2d at 1040. Since the claimant unequivocally testified that he was retired and was not attempting to secure employment, this Court concluded that the referee did not err in suspending the claimant's benefits as of the day the claimant retired.

The Board, in upholding the referee's decision, relied on *Patterson–Kelly Co. v. Workmen's Compensation Appeal Board (Woodrow)*, 137 Pa.Commonwealth Ct. 567, 586 A.2d 1043 (1990). In *Patterson–Kelly,* the claimant sustained a reinjury before the effective date of his early retirement. He and his employer entered into a supplemental agreement to pay partial disability benefits past the date of the claimant's retirement. When claimant sought compensation benefits due to a loss of earnings caused by the recurrence of his work-related disability, the employer appealed. This Court affirmed the award of total disability benefits even though the claimant had retired from his work duties. In doing so, this Court distinguished *Dugan* on the ground that the claimant had specifically testified that he did not consider himself permanently retired and intended to seek employment to supplement his Social Security payments. Because of this intention, this Court concluded that the claimant had sustained a wage loss. 137 Pa.Commonwealth Ct. at 572–73, 586 A.2d at 1046.

Both *Dugan* and *Patterson–Kelly* stand for the proposition that a disabled claimant's intention to secure employment

following voluntary retirement from his or her regular duties is controlling where the employer seeks to suspend compensation benefits based on the voluntary retirement. Here, the record clearly establishes that Claimant never removed himself from the job market because he intended to find a job in Florida to supplement his pension income. Under these circumstances, time spent preparing and relocating to another locale where the individual intends to begin a search for employment cannot be considered a withdrawal from the work force which would warrant a suspension of disability benefits. Accordingly, we will affirm the order of the Board.

PALLADINO, J., dissents.

### ORDER

AND NOW, this 3rd day of June, 1992, the order of the Workmen's Compensation Appeal Board, dated October 30, 1991, is hereby affirmed.