John McMULLEN, Petitioner,

v.

WORKERS' COMPENSATION APPEAL BOARD (CITY OF PHILADELPHIA), Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs March 21, 2003.

Decided Aug. 14, 2003.

Stephen A. Sawyer, Philadelphia, for petitioner.

Sandra R. Craig, Philadelphia, for respondent.

BEFORE: COLINS, President Judge, FRIEDMAN, Judge, FLAHERTY, Senior Judge.

FLAHERTY, Senior Judge.

John McMullen (Claimant) petitions for review of an order of the Workers' Compensation Appeal Board (Board) which affirmed in part and reversed in part an order of a Workers' Compensation Judge (WCJ). We affirm in part, vacate in part and remand for the reasons set forth below.

Claimant was employed as a firefighter for the City of Philadelphia (Employer). Pursuant to a Notice of Compensation Payable (NCP), he began receiving compensation benefits for an injury described as "chest pain/shortness of breath" that occurred on April 22, 1996. Thereafter, pursuant to a Supplemental Agreement, Claimant's benefits were suspended on May 22, 1996 in recognition of his return

to work without a loss of earning power, although Employer continued to remain liable for the payment of Claimant's reasonable and necessary medical expenses. However, Claimant continued to suffer from shortness of breath and chest pain and decided to retire on October 2, 1996. Thereafter, on October 4, 1996, Employer filed a Notice of Workers' Compensation Denial asserting that an injury that Claimant suffered on October 2, 1996 was not within the scope of employment.

On April 9, 1999, Claimant filed a Petition to Review/Reinstate Compensation Benefits alleging that as of October 2, 1996 his injury is causing a decrease in his earning power. In his Petition, Claimant also sought to amend the NCP to include occupational heart and lung disease that was caused by eighteen years of firefighting. Employer filed an Answer denying the allegations set forth in Claimant's Review/Reinstatement Petition. Thereafter, hearings were held before a WCJ.

Claimant testified that, when he returned to work after his April 22, 1996 injury, he was given the job of driving the fire truck so that he wouldn't be exposed to smoke. When asked why he decided to retire from firefighting on October 2, 1996 and start collecting his pension, Claimant testified that "in April I had an incident and, you know, it wasn't a very enjoyable experience. And it was weighing on my mind for a while and I thought it was time to leave, to find less strenuous work like an office job or whatever." (N.T. 11/02/1999, p. 4.) Claimant also stated that, since he stopped working for Employer, he has been taking computer science courses in college and is pursuing a Bachelor of Arts degree in Digital Arts with the anticipation of graduating in December of 2000. In addition, while attending college, he worked for the college for approximately 50 hours setting up software on computers.

With regard to his exposure to asbestos, Claimant testified that the fire station in which he worked underwent renovation for asbestos removal. (N.T. 1/01/2000). Claimant also testified that his Union was sponsoring an x-ray program for employees and that, in 1987 or 1988, he had his chest x-rayed. About six weeks later, he received a letter in the mail informing him that his test results were positive for asbestosis. (N.T. 11/02/1999, pp. 24–25).

In support of his Petitions, Claimant presented the testimony of Jonathan L. Gelfand, M.D., who is board-certified in internal medicine and pulmonary disease. Dr. Gelfand examined Claimant on April 14, 1999. Dr. Gelfand conducted pulmonary function testing, took chest x-rays, studied his medical records and took his history. The pulmonary studies revealed mild restriction, mild reduction of diffusion and no evidence of obstruction. The x-rays revealed bilateral pleural thickening and increased interstitial markings at the bases. Therefore, Dr. Gelfand concluded that Claimant suffers from pulmonary asbestosis and asbestos pleural disease that was caused by his exposure to asbestos as a firefighter. (N.T. 7/07/1999, pp. 17–20). He further testified that Claimant's "exposure to asbestos, which occurred during his activities as a firefighter, is responsible for the pulmonary function abnormalities, the chest X-ray abnormalities and his shortness of breath on exertion." (N.T. 7/07/1999, pp. 21–22). The WCJ accepted the testimony of Dr. Gelfand as credible.

Claimant also presented the testimony of Gaetano Capone, M.D., who is board certified in cardiology and internal medicine. Dr. Capone examined Claimant on November 5, 1999 and December 6, 1999. Dr. Capone concluded that Claimant suffers from coronary artery disease which is currently stable, hypertension and an irregular heartbeat. (N.T. 3/02/2000, p. 29).

Dr. Capone also stated that Claimant's work as a firefighter "contributed to his coronary artery disease and hypertension." (N.T. 3/02/2000, pp. 32–33). Because of these conditions, Dr. Capone stated that it would not be good for Claimant to return to his job as a firefighter, as exposure to smoke could affect his coronary disease. The WCJ found the testimony of Dr. Capone credible only to the extent it was consistent with the testimony of Gregg J. Reis, M.D.

Employer presented the testimony of Dr. Reis in defense of Claimant's Petitions. Dr. Reis is board certified in internal medicine and cardiology. He examined Claimant on October 14, 1999. Dr. Reis concluded that Claimant suffers from chest pain syndrome and that he has normal coronary arteries. Dr. Reis also testified that Claimant has fully recovered from the injury described in the NCP, which is "chest pain/shortness of breath", because he no longer suffers from any after-effects from that injury. Although he continues to suffer from chest pain, Dr. Reis could find no evidence that that condition was caused by the injury which he suffered in April of 1996. Dr. Reis further stated that he believes that Claimant's "underlying tendency towards chest pain syndrome was exposed by the severe conditions that he experienced in 1996 and that he continues to suffer from that underlying condition to this day." (N.T. 2/16, 2000, p. 20). He also stated that Claimant has no fixed coronary artery disease and that people such as Claimant who have a family history of coronary artery disease are more prone to anginal chest pain and that his current chest pain is not related to any work injury. The WCJ accepted the testimony of Dr. Reis as credible.

Employer also presented the testimony of Morris A. Swartz, M.D., who is board certified in internal medicine, pulmonary medicine and critical care medicine. Dr. Swartz examined Claimant on October 15, 1999. After examining Claimant, he determined that Claimant suffered no significant injury from his exposure to smoke in April of 1996. In addition, Dr. Swartz testified that asbestosis is not causing Claimant to suffer from any ongoing disability and that he only suffers from minimal pleural scarring. (N.T. 2/24/2000, pp. 30–31). The WCJ found the testimony of Dr. Swartz not credible where it was inconsistent with the testimony of Dr. Gelfand.

By decision and order circulated on October 12, 2001, the WCJ concluded that Claimant established that he suffers from pulmonary asbestosis and asbestos pleural disease as a result of working as a firefighter for Employer. Accordingly, the WCJ treated the Reinstatement Petition as a Claim Petition and granted the Claim Petition as of October 1, 1996. In the Order, the WCJ also suspended Claimant's benefits as of October 2, 1996 because he voluntarily retired on that date. However, the WCJ also ordered that Employer remain liable for Claimant's reasonable, necessary and causally related medical expenses related to his pulmonary disease. The WCJ also denied Claimant's Review Petition. Finally, based on the testimony of Dr. Reis, the WCJ terminated Claimant's benefits with regard to the April 22, 1996 injury. Both Claimant and Employer appealed to the Board. The Board reversed the WCJ's grant of the Claim Petition because Claimant never testified that he was exposed to asbestos either at the fire station or while fighting fires. As to the retirement issue, the Board stated that this issue was moot given its reversal of the Claim Petition. However, it did note that the evidence suggested that Claimant's retirement was voluntary. As to the termination of benefits, the Board found that the testimony supported the WCJ's

finding that Claimant fully recovered from his work injury. Accordingly, the Board affirmed this aspect of the WCJ's decision. Claimant's appeal to this Court followed.[1]

On appeal, Claimant argues that: 1) the Board erred by affirming the WCJ's termination of his benefits, 2) the Board erred by affirming the WCJ's denial of the Review Petition, 3) the Board erred by reversing the WCJ's grant of the Claim Petition and grant of medical benefits for a work-related asbestos disease and 4) the Board erred by affirming the WCJ's finding that Claimant voluntarily retired.

■ First, Claimant argues that the WCJ erred by terminating his benefits based on the testimony of Dr. Reis. In a termination proceeding, the burden of proof is on the employer to establish that the claimant has fully recovered from his work-related injury. *Udvari v. Workmen's Compensation Appeal Board (USAir, Inc.),* 550 Pa. 319, 327, 705 A.2d 1290, 1293 (1997). The employer meets this burden when its medical expert "unequivocally testifies that it is his opinion, within a reasonable degree of medical certainty, that the claimant is fully recovered, can return to work without restrictions and that there are no objective medical findings which either substantiate the claims of pain or connect them to the work injury." *Id.*

■ Dr. Reis testified that Claimant has fully recovered from the chest pain/shortness of breath that he experienced in April

of 1996 while working for Employer and that he does not suffer any after-effects from that injury. Although Claimant does still suffer from chest pain, Dr. Reis could find no medical evidence to show that this pain is caused by any injury Claimant suffered in April of 1996. Rather, any chest pain he does experience is caused by an underlying tendency towards chest pain syndrome because of his familial history of coronary artery disease and related anginal chest pain. Dr. Reis' testimony that Claimant no longer suffers from any injury related to the April 22, 1996 incident at work is supported by the evidence and the WCJ accepted this testimony as credible. It is well-settled that this Court may not overturn the credibility decisions of WCJ's on appeal. Accordingly, because the WCJ did not err by terminating Claimant's benefits, the Board did not err by affirming this part of the WCJ's order.[2] For these same reasons, the WCJ also did not err by denying the Review Petition seeking to include a heart and lung disease injury in the NCP, as Dr. Reis testified that Claimant no longer suffers from any injury as a result of the April 22, 1996 work-related incident.

■ Next, Claimant argues that the Board erred by reversing the WCJ's grant of benefits for a work-related asbestos disease. In a claim petition proceeding, the claimant bears the burden of proving that he suffers from a work-related injury that occurred in the course and scope of his employment and that the injury results in

---

1. This court's appellate review over an order of the Board is limited to determining whether the necessary findings of fact are supported by substantial evidence, whether Board procedures were violated, whether constitutional rights were violated or an error of law was committed. *Republic Steel Corporation v. Workmen's Compensation Appeal Board (Petrisek),* 537 Pa. 32, 640 A.2d 1266 (1994).

2. We note that Employer did not file a formal Termination Petition in this case, but the WCJ found that Employer's "request for a termination of Claimant's compensation benefits is granted." (Conclusion of Law No. 4). We can find no evidence of Employer's request in the record of this case. However, Claimant does not challenge the termination of his benefits on this basis. Therefore, we will not address this issue further.

a loss of earning power. *Inglis House v. Workmen's Compensation Appeal Board (Reedy)* 535 Pa. 135, 634 A.2d 592 (1993). Pursuant to Section 108(*l*) of the Act (Act),[3] 77 P.S. § 27.1(*l*), "[a]sbestosis and cancer resulting from direct contact with, handling of, or exposure to the dust of asbestos in any occupation involving such contact, handling or exposure" is a compensable occupational disease.

In its brief, Employer makes the following argument with regard to the asbestos-related disease that Claimant alleges he suffers from: "Claimant's argument that he is entitled to a 'statutory presumption' that his condition is work-related is misplaced for several reasons. First, his claim was clearly considered by [the WCJ] as a claim under Section 301(c)(1) and not as an occupational·disease claim, since she made no occupational disease findings, and her decision makes no mention of Section 108(*l*), Section 108(*o*), or the rebuttable presumption contained in Section 301(e). Claimant is not entitled to any such presumption under Section 301(c)(1)."

■ Although Employer does not specifically state that Claimant would had to

have been seeking benefits under the Occupational Disease Act (OD Act)[4] in order to receive the rebuttable presumption, Employer implied this in its argument. Employer is correct that Claimant was not seeking benefits under the OD Act. Rather, Claimant was seeking compensation benefits for an occupational disease under the Workers' Compensation Act. However, the rebuttable presumption of Section 301(e) is found in the Workers' Compensation Act, which provides that:

> If it be shown that the employe, at or immediately before the date of disability, was employed in any occupation or industry in which the occupational disease is a hazard, it shall be presumed that the employe's occupational disease arose out of and in the course of his employment, but this presumption shall not be conclusive.

77 P.S. § 413. Thus, the rebuttable presumption of Section 301(e) clearly applies to this case.[5]

Although we do not agree with Employer's conclusions, its argument does highlight the problem with the WCJ's decision:

---

3. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1–1041.4; 2501–2606.

4. Act of June 21, 1939, P.L. 566, *as amended*, 77 P.S. §§ 1201–1603.

5. We note that a similar rebuttable presumption provision is found in the Section 301(f) of the OD Act, which provides that: "If it be shown that the employe, at or immediately before the date of disability, was employed in any occupation or industry in which the occupational disease is a hazard, it shall be presumed that the employe's occupational disease arose out of and in the course of his employment but this presumption shall not be conclusive." 77 P.S. § 1401(f). "A claimant's entitlement to benefits under the [Workers' Compensation Act] is distinguishable from a claimant's entitlement to benefits under the [OD Act]. *See* 77 P.S. § 1201 et seq. Under the [Workers' Compensation Act] bene-

fits are awarded ... where the claimant has a disease or disability which directly affects earning power. Under the [OD Act] benefits are awarded because the claimant suffers an occupational disease and the claimant's earning power is a consideration reflected only in the amount of benefits received, 77 P.S. § 1406." *Republic Steel Corp. v. Workmen's Compensation Appeal Board (Petrisek)*, 537 Pa. 32, 38, 640 A.2d 1266, 1270 (1994). Although there are many similarities between the Workers' Compensation Act and the OD Act, "[s]ince the [Workers' Compensation] Act covers all occupational diseases where exposures have occurred after June 30, 1973, and because the compensable disability or disease must occur within 300 weeks of the date of last exposure to the hazard, the 1939 O.D. Act has very little practical application." Pennsylvania Workers' Compensation Practice and Procedure ("Yellow Book"), para. 2.150 (2002).

the WCJ failed to make the proper and necessary findings. With regard to his exposure to asbestos, Claimant testified that he was a firefighter and that he worked in a firehouse that contained asbestos. However, the WCJ failed to make any findings regarding whether Employer rebutted the presumption that Claimant's asbestos-related disease arose in the course of his employment. In addition, the WCJ also failed to make any findings regarding whether Claimant provided Employer with proper notice of this injury or whether his claim for this injury was filed within the applicable statute of limitations. Therefore, we must vacate the Board's order in this regard and remand this case to the Board, for further remand to the WCJ, for the purpose of allowing the WCJ to make these required findings and to decide whether or not Claimant is entitled to workers' compensation benefits for asbestosis.

Finally, Claimant argues that the Board erred by affirming the WCJ's finding that Claimant voluntarily retired. With regard to the issue of suspension of benefits upon retirement, this Court has previously held that:

A claimant is precluded from continuing to receive benefits if he voluntary removes himself from the work force because he is no longer seeking employment. *Dugan v. Workmen's Compensation Appeal Board (Fuller Co.),* 131 Pa.Cmwlth. 218, 569 A.2d 1038 (1990) However, where a claimant intends to get a job after retiring he has not left the work force and benefits can continue. *Patterson–Kelly v. Workmen's Compensation Appeal Board (Woodrow),* 137 Pa.Cmwlth. 567, 586 A.2d 1043 (1991).

*Armstrong World Industries v. Workers' Compensation Appeal Board (Evans),* 703 A.2d 90, 91 (Pa.Cmwlth.1997). Further-

more, our Supreme Court has held that "[f]or disability compensation to continue following retirement, a claimant must show that he is seeking employment after retirement or that he was forced into retirement because of his work-related injury." *Southeastern Pennsylvania Transportation Authority v. Workmen's Compensation Appeal Board (Henderson),* 543 Pa. 74, 79, 669 A.2d 911, 913 (1995).

■ In this case, the evidence does not support the WCJ's decision to suspend Claimant's benefits. To the contrary, Claimant started attending college for the purpose of attaining a computer science degree that would allow him to get a job that would not require strenuous physical activity. Additionally, while attending college, Claimant actually did do some work for the school. Although Claimant may have voluntarily retired from his job as a firefighter, Claimant's testimony shows that he in no way retired and intended to leave the work force. Therefore, a suspension of benefits was not proper. *Patterson–Kelly.* However, if the WCJ decides on remand that Claimant is not entitled to benefits for an asbestos-related lung disease, this issue would be moot.

Accordingly, the order of the Board is affirmed in part and vacated in part and this case is remanded to the Board, for further remand to the WCJ, for the reasons set forth above.

### ORDER

AND NOW, August 14, 2003, the order of the Workers' Compensation Appeal Board docketed at A01–3029 and dated September 25, 2002 is hereby AFFIRMED in part and VACATED in part and this case is REMANDED to the Board for further remand to the Workers'

Compensation Judge for the reasons set forth in the foregoing opinion.

Jurisdiction relinquished.