Thomas **PAVONARIUS**, Petitioner,

v.

**WORKERS' COMPENSATION APPEAL BOARD (SAMUEL LEVITT SHEET METAL, INC.), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs June 5, 1998.
Decided July 10, 1998.
Reargument Denied Aug. 27, 1998.

James J. DeMarco, Philadelphia, for petitioner.

Eileen V. Dooley, Philadelphia, for respondent.

Before DOYLE and SMITH, JJ., and NARICK, Senior Judge.

NARICK, Senior Judge.

The issues presented by Thomas Pavonarius (Claimant) for our review include the following: (1) whether the Workers' Compensation Judge (WCJ) erroneously based his decision to terminate benefits on irrelevant evidence related to Claimant's receipt of a union pension and Social Security disability benefits; (2) whether the testimony of the employer's medical witness was equivocal; and (3) whether the WCJ's findings concerning Claimant's functional capacity and medical restrictions were inconsistent with the evidence.

Claimant appeals from an order of the Workers' Compensation Appeal Board (Board) that affirmed the decision of the WCJ to grant the termination petition filed by Samuel Levitt Sheet Metal, Inc. (Employer).

Claimant worked for Employer as a sheet metal worker when he suffered a work-related injury on February 19, 1993 while installing ductwork in the law library of the University of Pennsylvania. As a result, Employer issued a notice of compensation payable on April 15, 1993, which described the nature of Claimant's injury as a cervical disc bulge C5-6. On July 11, 1994, Employer filed a termination petition in which Employer alleged that Claimant was fully recovered from his work injury as of July 15, 1993, the date Claimant was initially examined by Employer's medical expert, Dr. Mario J. Arena, M.D. Claimant filed an answer denying the allegations and the case proceeded by depositions and a hearing.

In support of its termination petition, Employer presented the deposition testimony of Claimant, who testified that while making a connection on some ductwork he suddenly felt a twinge in his neck. Claimant testified that he still had pain in his neck and down both of his arms and that he could not return to his pre-injury job. Employer also presented the deposition testimony of Dr. Arena, a board-certified orthopedic surgeon. Dr. Arena examined Claimant on July 15, 1993 and again on April 14, 1994. Based on his examinations of Claimant, Claimant's medical history, and his review of the medical records, Dr. Arena concluded that Claimant's work injury was a cervical sprain/strain with underlying degenerative disc disease of the cervical spine. Dr. Arena further concluded that the sprain/strain had resolved by the time of the July 15, 1993 examination. Finally, Dr. Arena testified that any continuing pain suffered by Claimant and any restrictions placed on Claimant's ability to return to his pre-injury job were related solely to Claimant's pre-existing degenerative disc disease.

Employer also introduced the deposition testimony of Dr. J. George Teplick, M.D., a board-certified radiologist. Although Dr. Teplick did not know Claimant and never examined him, Dr. Teplick did review a MRI film of Claimant's cervical spine taken on March 31, 1993. In his deposition, Dr. Teplick testified that the MRI was essentially negative, with no disk herniations or any other findings that could be attributed to recent trauma. Further, Dr. Teplick opined that the MRI showed that Claimant's cervical spine was entirely within normal limits for a 58-year old individual and actually revealed

much fewer degenerative changes than expected for his age group.

In opposition, Claimant provided further testimony at the hearing before the WCJ and presented the deposition testimony of Claimant's treating physician, Dr. Nappi, M.D., an orthopedic surgeon who is not board-certified. Dr. Nappi examined Claimant on March 27, 1993 and reviewed several diagnostic studies including x-rays, the March 1993 MRI and an EMG. Dr. Nappi testified that the MRI showed a bulging disc at C5–C6 with degenerative disc disease and some arthritis. Dr. Nappi further testified that the results of Claimant's EMG indicated that he had developed chronic radiculopathy on the right along the nerve root at C5–C6. Dr. Nappi also ordered a functional capacity evaluation, which showed that Claimant could return to light duty work. Based on Claimant's history, physical examinations and the diagnostic studies, Dr. Nappi diagnosed Claimant as suffering from cervical disc syndrome, which he opined was caused by the work injury. Finally, Dr. Nappi concluded that Claimant still suffered from his 1993 work injury and was unable to return to his pre-injury job.

Based on the evidence presented by both parties, the WCJ found that Claimant was fully recovered from his work-related injury as of Dr. Arena's examination on July 15, 1993. In support of his conclusion, the WCJ found the testimony of Dr. Arena and Dr. Teplick to be more credible and persuasive than that of Dr. Nappi. Moreover, the WCJ specifically found that Claimant was not credible or worthy of belief. Based on these findings, the WCJ granted Employer's termination petition. Claimant appealed and the Board affirmed. Claimant now appeals to this Court.[1]

On appeal, Claimant argues that the WCJ erred by overruling Claimant's objections to the admission of testimony regarding Claimant's receipt of other benefits, including a union pension and Social Security disability. Our review of the record, however, reveals that the WCJ **sustained**, rather than overruled, a number of objections raised by Claimant's attorney to testimony regarding the other benefits. Some of the objections referred to by Claimant's attorney were raised at Claimant's deposition and were later sustained by the WCJ in his decision. (R.R. at 85 – 94). At the hearing, the WCJ agreed that Employer's inquiry into the amount of such benefits was irrelevant and inappropriate and sustained an objection. (R.R. at 19). Although the WCJ permitted Employer's attorney to ask whether he was receiving union retirement benefits in addition to Social Security disability benefits, Claimant cannot now cry foul because Claimant's attorney raised the subject of other benefits during his direct examination of Claimant at the hearing. (R.R. at 13–14).

Despite the fact that the WCJ sustained several objections relating to Claimant's receipt of other benefits, the WCJ did make several findings of fact relating to the "other benefits" evidence, including the following:

7. Claimant has applied for and received a union pension, social security benefits and workers' compensation benefits.

22.... He presently is receiving Social Security Disability Benefits in addition to Workers' Compensation Benefits.

23. On cross examination, Claimant admitted that he was also receiving retirement benefits.

(WCJ's Findings of Fact Nos. 7, 22 – 23). Claimant contends that these findings show that the WCJ based his decision to grant Employer's termination petition on irrelevant and prejudicial evidence. However, these three findings are based, in part, upon testimony elicited by Claimant's attorney and admitted by Claimant as true. Moreover, Claimant's argument assumes that the WCJ rested his decision to grant termination on these three findings. To make such an assumption ignores the record in this case, which does not indicate that the WCJ drew any adverse inferences from the "other benefits" facts. If anything, the more likely as-

---

1. Our scope of review in a workers' compensation appeal is limited to a determination of whether constitutional rights were violated, an error of law was committed or whether neces-sary findings of fact are supported by substantial competent evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704.

sumption is that the WCJ simply restated these facts in his findings as part of his review of the record, especially in light of the fact that he previously found such evidence irrelevant and never again mentioned these findings in his decision. The WCJ's decision in this case relied solely on the medical testimony and the credibility of the witnesses.[2]

■ If we assume for purposes of Claimant's argument that the WCJ erroneously admitted the "other benefits" evidence, then we are still left with the question of whether Employer presented other substantial, competent evidence[3] to meet its burden of proof.[4] In a proceeding to terminate compensation, the employer bears the burden of proving that a work-related disability has ceased. *Strattan v. Workmen's Compensation Appeal Board (Hollis)*, 159 Pa.Cmwlth. 433, 633 A.2d 1250 (1993). The employer can meet this burden by presenting unequivocal medical evidence that the claimant has fully recovered from the work-related injury. *Ruhl v. Workmen's Compensation Appeal Board (Erie County Geriatric Center)*, 102 Pa.Cmwlth. 374, 518 A.2d 345 (1986). Here, the WCJ found the testimony of both Dr. Arena and Dr. Teplick persuasive and credible.

Dr. Arena examined Claimant on July 15, 1993 and April 14, 1994. Dr. Arena testified that various physical tests he performed on Claimant were negative and that he found no evidence of a nerve injury or neurological compromise. Dr. Arena diagnosed Claimant's injury as a resolved cervical sprain/strain with underlying degenerative disc disease of the cervical spine. He explained that

an injury such as the one suffered by Claimant usually resolves over a six to eight week period. Dr. Arena further testified that the degenerative disc disease, as revealed by the March 1993 MRI report, was not related to Claimant's work injury, which was a sprain/strain of muscles and did not affect the rate of degeneration of the discs. The April 14, 1994 examination yielded the same diagnosis. As a result, Dr. Arena concluded that Claimant was completely recovered from his work injury as of the July 15, 1993 examination and any restrictions placed on Claimant's return to work were related only to the pre-existing degenerative disc disease.

Dr. Teplick also testified that Claimant's MRI was entirely within normal limits for an individual Claimant's age and that Claimant actually had fewer degenerative changes than expected for his age group. Although Dr. Teplick never examined Claimant, the WCJ limited his consideration of Dr. Teplick's testimony to his interpretation of the MRI film. Dr. Teplick also testified that there were no abnormalities in the bone structures of Claimant's cervical spine and that his disc spaces were all of normal width and length. Finally, Dr. Teplick found no disc herniations and agreed with the radiologist's MRI report, which indicated that all of Claimant's discs demonstrated a "minimal degree" of decreased signal intensity associated with degenerative disc disease.

■ As the finder of fact, the WCJ has exclusive province over questions of credibility and evidentiary weight. *Northeastern*

---

2. Claimant also bases his argument on findings No. 1 and No. 6 in which the WCJ made references to Claimant's membership in the union. However, Claimant testified to these facts in his deposition without objection from counsel. Again, nowhere in his decision did the WCJ rely on facts relating to Claimant's receipt of union benefits.

3. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Gonzalez v. Workmen's Compensation Appeal Board (Penn Pad Co.)*, 143 Pa.Cmwlth. 177, 598 A.2d 650 (1991).

4. Both Employer and the Board relied on the case of *Lathilleurie v. Workmen's Compensation Appeal Board (Citgo)*, 660 A.2d 694 (Pa.Cmwlth. 1995) for the proposition that reliance on im-

properly admitted evidence is harmless error where there is competent admissible evidence to support the WCJ's findings. Although this Court did not specifically discuss the concept of harmless error in *Lathilleurie*, we did assume for argument purposes in that case that the objected to evidence was erroneously admitted by the referee. Once we made that assumption, we asked whether the claimant met his burden based on all other evidence presented. Because there was substantial other evidence presented, we upheld the referee's decision. Thus, for purposes of our analysis here, we will assume arguendo that the WCJ improperly admitted or overruled objections relating to Claimant's receipt of other benefits.

*Hospital v. Workmen's Compensation Appeal Board (Turiano)*, 134 Pa.Cmwlth. 164, 578 A.2d 83 (1990). In addition, the WCJ is free to reject one physician's testimony in favor of another physician's testimony. *Wynn v. Workmen's Compensation Appeal Board (Department of Transportation)*, 77 Pa.Cmwlth. 631, 466 A.2d 769 (1983). The WCJ found the testimony of Employer's medical experts more credible than the testimony of Claimant and his treating physician, Dr. Nappi. Dr. Nappi testified that Claimant suffered from cervical disc syndrome, which was caused by his work injury, and Claimant was unable to return to his preinjury job. Dr. Nappi's testimony contradicted the testimony of Dr. Arena and Dr. Teplick, both of whom testified that there was no abnormal bulging at C5–C6. Because the WCJ found the testimony of Dr. Arena and Dr. Teplick more persuasive, the WCJ was free to reject Dr. Nappi's testimony. Thus, Employer presented substantial evidence other than the "other benefits" evidence to meet it burden of proof.

■ However, Claimant argues that Dr. Arena's testimony was equivocal and cannot provide substantial evidence for the WCJ's decision. A determination of whether medical testimony is equivocal is a conclusion of law subject to our review. *Koszowski v. Workmen's Compensation Appeal Board (Greyhound Lines)*, 141 Pa.Cmwlth. 253, 595 A.2d 697 (1991). We have reviewed Dr. Arena's testimony in its entirety and conclude that his testimony and medical opinions were unequivocal. In his testimony, Dr. Arena gave his medical opinion that on February 19, 1993, Claimant suffered a cervical sprain/strain while installing ductwork. He further opined that Claimant's complaints of pain were related solely to his degenerative disk disease and that the sprain/strain had resolved. Dr. Arena's testimony clearly shows that his opinions were unequivocal.

Nonetheless, Claimant argues that Dr. Arena's testimony was equivocal with respect to his explanation of whether there was a connection between Claimant's work injury

and his degenerative disk disease. The alleged equivocation occurred when Dr. Arena acknowledged that injuries can aggravate pre-existing conditions, such as degenerative disc disease, but he could not explain why there was no causal relationship between the sprain/strain and the degenerative disc disease even though the two conditions emerged one after the other. We have extensively reviewed this portion of Dr. Arena's testimony and we find no equivocation. Claimant's argument focuses on one small portion of Dr. Arena's testimony and does not consider his testimony in its entirety.

■ Although Dr. Arena admitted that he could not pinpoint exactly when the symptoms associated with Claimant's sprain/strain ended and those of the degenerative disc disease started, Dr. Arena unequivocally testified that the sprain/strain had resolved as of the date of his first examination of Claimant on July 15, 1993. In support of his opinion, Dr. Arena testified that the physical tests performed on Claimant were normal, and those tests, along with Claimant's history and the medical records, did not indicate in any way that Claimant still suffered from the sprain/strain. He further testified that Claimant's continued complaints of pain were consistent with degenerative disc disease. Dr. Arena was clear in his testimony that the sprain/strain and the underlying disc disease were not connected even though the symptoms associated with the two conditions may have overlapped. Dr. Arena's failure to provide an exact time when one condition stopped and the other arose does not make his testimony equivocal, but instead goes to the issue of his credibility. Because credibility is a question for the WCJ, we will not now second-guess the believability of Dr. Arena's medical opinion.[5]

■ In his last argument, Claimant takes issue with the WCJ's Finding of Fact No. 27, which provides as follows:

a. The testimony of Claimant is not credible or worthy of belief. His explanation of the injury mechanism is confused, he is

5. With respect to the other alleged equivocations in Dr. Arena's testimony, we find that these other equivocation arguments are also credibility is-

sues in disguise. Thus, we need not address these arguments.

very active based on his testimony, and his activities clearly exceed the restrictions set forth by Dr. Nappi.

b.... There is no credible testimony in the record that an aggravation of the minimal degenerative changes occurred or is disabling.

Although Claimant admits he may have had difficulty describing the injury event, he contends that his description of the "injury mechanism" was not confused. However, Claimant admitted during his deposition that he could not recall the specific position he was in when he injured his neck. (R.R. at 46). This admission and Claimant's difficulty in describing the event support the WCJ's finding that Claimant's explanation of the "injury mechanism" was confused.

■ Claimant further argues that there is nothing to support the finding that Claimant was very active to the point where he exceeded Dr. Nappi's restrictions. This argument ignores Claimant's own testimony that he drives his wife to work every day, does the grocery shopping, performs the household chores, and drives to the beach in New Jersey. Although Dr. Nappi testified that he placed a one-hour driving restriction on Claimant, Dr. Nappi was unaware of Claimant's driving trips to the beach. Also of significance is the fact that no other restrictions were placed on Claimant's ability to drive. Hence, the WCJ was free to find that Claimant was active beyond his medical restrictions. Also, Claimant's argument that Finding of Fact 27(b) is not supported by the evidence ignores the WCJ's findings with respect to Employer's medical experts, who testified that the work injury was a cervical sprain/strain that did not aggravate the underlying degenerative disc disease. Finally, as with many of Claimant's prior arguments, his arguments regarding Finding of Fact No. 27 raise credibility issues that are beyond our realm of consideration on appeal.

Accordingly, we affirm the order of the Board.

### ORDER

AND NOW, this 10th day of July, 1998, the order of the Workers' Compensation Appeal Board in the above-captioned case is hereby affirmed.