**WASHINGTON STEEL CORPORATION,**
Petitioner,

v.

**WORKERS' COMPENSATION APPEAL BOARD (WAUGH),**
Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs June 18, 1999.

Decided July 20, 1999.

---

2. Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended*, June 24, 1996, P.L. 350, No. 57.

Albert S. Lee, Pittsburgh, for petitioner.

Daniel K. Bricmont, Pittsburgh, for respondent.

Before PELLEGRINI, J., LEADBETTER, J., and JIULIANTE, Senior Judge.

PELLEGRINI, Judge.

Washington Steel Corporation (Employer) appeals from an order of the Workers' Compensation Appeal Board (Board) reversing the decision of the Workers' Compensation Judge (WCJ) and granting Loyle Leland Waugh (Claimant) workers' compensation benefits for his binaural hearing loss.

Claimant filed a claim petition on September 26, 1994, alleging that he had suffered a bilateral hearing loss caused by his continuous exposure to excessive noise during the course of his employment with Employer where he had been employed for approximately 30 years since 1964 and continued to be employed. Employer filed an answer denying that allegation. At the hearing before the WCJ, Claimant testified that during the course of his employment, he was exposed to noise and used various types of hearing protection. He stated that for the past ten years, he had worked in a booth that had lessened his exposure to noise. Claimant also admitted that he had hunted both small game and deer for approximately 44 years, using a 12–gauge shotgun when hunting small game and a .30–06 rifle when hunting deer, and did not wear hearing protection when hunting. Claimant further stated that he had not been aware that he had suffered a significant hearing loss until he reviewed his medical expert's report, but he had experienced ringing in his ears for five or six years.

In support of his claim petition, Claimant offered the expert medical testimony of Michael C. Bell, M.D. (Dr. Bell), a board-certified otolaryngologist who examined him on August 3, 1994. Dr. Bell testified that Claimant told him he hunted twice a year and shot his rifle about ten times a season. He also told Dr. Bell that he had trouble hearing the television and telephone and had difficulty hearing in social settings due to background noise. Dr. Bell stated that his examination of Claimant revealed that he suffered a "moderate to severe to profound" loss in his left ear and a "moderate to severe" loss in the right ear. Dr. Bell opined that based upon Claimant's history, examination, audiometric test results and x-ray studies, that Claimant had sustained a bilateral, symmetrical hearing loss for all practical intents and purposes as a result of his employment with Employer. Dr. Bell did not

provide any opinion on the percentage of Claimant's loss of hearing.[1]

In opposition, Employer offered the expert testimony of Sidney N. Busis, M.D. (Dr. Busis), also a board-certified otolaryngologist. Dr. Busis testified that he examined Claimant on January 20, 1995, at which time Claimant reported a hearing loss that had existed for about six or seven years, and a ringing in his ears that he had for the past four or five years. He also noted that Claimant had been a hunter for 40 years and had obtained a hunting license every year. Regarding his examination of Claimant, Dr. Busis stated that Claimant had an asymmetrical hearing loss in higher frequencies with a considerably greater loss in his left ear, and attributed that loss to Claimant's hunting activities. He explained that Claimant exhibited a 60 decibel loss on the right side and a 90 decibel loss on the left side, and that occupational hearing loss usually did not reach a maximum level of more than 75 decibels in the higher frequencies but that gunfire would cause such a hearing loss. Ultimately, Dr. Busis opined that Claimant sustained his hearing loss primarily from shooting guns, finding that he sustained an 11.2% hearing loss on the right side and a 16.9% hearing loss on the left side for a binaural hearing loss of 12.2%. Dr. Busis stated that he utilized the American Medical Association's Guides to the Evaluation of Permanent Impairment (AMA Guides) – the standard required to be used in measuring occupational hearing loss under Act 1 of 1995 (Act 1), Act of February 22, 1995, P.L. 1, the hearing loss amendments to Section 306(c)(8) of the Workers' Compensation Act[2] – in arriving at this figure. He noted that the AMA Guides did not take into account aging when calculating impairment and stated that pursuant to the American National Standard Institute (ANSI), 5.3% of Claimant's 12.2% hearing loss was due to aging.

Finding Dr. Busis credible and persuasive and specifically rejecting Dr. Bell's testimony as well as Claimant's testimony as not being credible, the WCJ dismissed Claimant's claim petition. Specifically, in finding of fact 10.(c), the WCJ stated the following:

> The testimony and opinions of Dr. Busis are found to be credible, reliable and persuasive. In rendering his opinions, Dr. Busis considered the fact that claimant has been a hunter for most of his life. Dr. Busis explained the significance and causation of claimant's asymmetrical hearing loss. Dr. Busis's [sic] opinion that claimant has sustained an 11.2% hearing loss on the right side and a 16.9% hearing loss on the left side, for a binaural hearing loss of 12.2% is accepted. Dr. Busis's [sic] opinion that 5.3% of claimant's hearing loss is due to aging, which opinion was not refuted by Dr. Bell and is uncontradicted on the record, is accepted.

Claimant filed an appeal with the Board arguing that the WCJ erred in relying on Dr. Busis' calculation of his hearing loss which factored in the aging process. The Board agreed with Claimant and reversed the WCJ's decision concluding that Dr. Busis' calculation of Claimant's hearing loss based on an age factor exceeded the scope of Act 1.[3] The Board noted that Claimant had sustained his burden of a 12.2% hearing loss because the WCJ accepted Dr. Busis' testimony as credible. This appeal by Employer followed.

1. At a subsequent hearing on this matter, Claimant's counsel stipulated to a hearing loss of 20% or less.

2. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 513(8).

3. Under Section 306(c)(8)(iii) of the Act, 77 P.S. § 513(8)(iii), in order to qualify for benefits, a claimant must suffer a minimal of a 10% binaural hearing loss. That section provides:

> Notwithstanding the provisions of subclauses (i) and (ii) of this clause, if there is a level of binaural hearing impairment as calculated under the Impairment Guides which is equal to or less than ten per centum, no benefits shall be payable.

Employer argues that the Board erred in reversing the WCJ's decision because the WCJ discredited both Claimant's testimony and that of his medical expert and, as such, he failed to produce any evidence that he suffered a binaural hearing loss of at least 10%. We agree. The WCJ only found Dr. Busis' testimony credible, and Dr. Busis testified that Claimant's hearing loss was due to his hunting activities over 40 years. Specifically, when asked if he had formed an opinion as to the cause of any of Claimant's hearing loss, he responded:

A. Yes. I believe he has noise-induced hearing loss primarily due to gunfire shooting from the right shoulder. (Notes of Testimony at p. 18.)

Additionally, when asked if he attributed any of Claimant's hearing loss to his exposure to noise at work, he responded:

A. What I believe is that he could have had some occupational noise-induced hearing loss in early years of employment. As I mentioned, if he had, he would have reached a maximum level by the early '80s. And, also, I said and I believe it's questionable whether he was exposed to enough noise on a time-weighted average basis all together because he wore hearing protection and he said for ten years he worked in almost ten years he worked in a booth which he said was much quieter. (Notes of Testimony at pp. 24–25.)

When further asked if he attempted to quantify the extent to which there was any hearing loss using any accepted formula, Dr. Busis stated:

A. Yes. We used the American Medical Association Guides to the Evaluation of Permanent Impairment; and based on those guides, Mr. Waugh had an 11.2 percent hearing impairment on the

right, a 16.9 percent hearing impairment on the left, and a binaural hearing impairment of 12.2 percent. (Notes of Testimony at p. 20.)

While the Board determined that Dr. Busis found that Claimant suffered a binaural hearing loss of 12.2% utilizing the AMA Guides and assumed that figure was attributed to his exposure to noise at work, Dr. Busis specifically testified to the contrary. Just because Dr. Busis utilized the AMA Guides does not mean that any percentage of hearing loss found under that standard was work related. The AMA Guides only provide the standards against which *any* hearing loss is measured; it is for the medical expert to determine what percent of that loss is attributable to the workplace.

Because the WCJ is the ultimate fact finder and determiner of credibility, *Buczynski v. Workmen's Compensation Appeal Board (Richardson–Vicks, Inc.),* 133 Pa.Cmwlth. 532, 576 A.2d 421 (1990), and he found Dr. Busis credible, the Board erred by determining that Claimant had proven he suffered a 12.2% hearing loss for which he was entitled to workers' compensation benefits.[4] Accordingly, the decision of the Board is reversed.

### ORDER

AND NOW, this 20th day of July, 1999, the order of the Workers' Compensation Appeal Board dated December 23, 1998, No. A98–0385, is reversed.

---

4. Although Claimant contends that it was erroneous for the WCJ to rely on the ANSI standard to reduce a portion of his hearing loss award based on the effects of aging, that argument is irrelevant for purposes of this case because Claimant did not prove that he suffered *any* work related hearing loss. Had he done so, we would agree that such an award based on the aging process would have been improper. *See USX v. Workers' Compensation Appeal Board (Rich),* 727 A.2d 165 (Pa. Cmwlth.1999).