**The BUDD COMPANY, Petitioner,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (CURRAN), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Sept. 29, 2000.

Decided Nov. 14, 2000.

Deborah A. Rocco, Philadelphia, for petitioner.

No appearance entered for respondent.

BEFORE: McGINLEY, Judge, FRIEDMAN, Judge and MIRARCHI, Jr., Senior Judge.

FRIEDMAN, Judge.

The Budd Company (Employer) appeals from the March 28, 2000 order of the Workers' Compensation Appeal Board (WCAB), which affirmed the decision of a workers' compensation judge (WCJ) to grant the hearing loss petition filed by Walter Curran (Claimant) based on a 12.2% impairment. We affirm.

Claimant began working for Employer in 1969. Claimant started in Employer's vim press shop, where the open gear presses make a tremendous amount of noise. After ten years, Claimant moved to the main press shop, where the noise is worse. Five years later, Claimant moved to the shop building. After four years in the shop building, Claimant began working with Employer's construction group, which installs iron fixtures throughout the plant. Since 1986, Claimant has worked in the assembly area, which is very noisy. (WCJ's Findings of Fact, Nos. 2(a)–2(c).)

Claimant's hearing was tested periodically at work, and, in 1991, Claimant was advised that tests revealed a hearing loss from exposure to loud noise. Later, when Claimant began experiencing hearing problems, he went for a hearing test and was referred to Herbert Kean, M.D., a specialist. Dr. Kean examined Claimant on June 1, 1994 and had Claimant's hearing tested by an audiologist. Afterward, Claimant obtained a hearing aid. (WCJ's Findings of Fact, Nos. 2(d)–2(f).)

Claimant filed a claim petition on July 11, 1994, alleging a hearing loss from exposure to noise on the job. Employer filed an answer, and hearings were held before the WCJ.

Claimant testified on his own behalf and offered the deposition testimony of Dr. Kean, who has been Board-certified as an ear, nose and throat specialist since 1961 and who has practiced medicine for thirty-five years. Dr. Kean testified that Claimant has a permanent bilateral high frequency hearing loss. Using the American Medical Association's (AMA) 1993 guidelines and the results of Claimant's June 1, 1994 audiogram, Dr. Kean calculated Claimant's impairment at 12.2%. Dr. Kean also testified that he reviewed an audiogram done on March 24, 1969, when

Claimant started working for Employer. Dr. Kean found that Claimant had no impairment then and, therefore, concluded that Claimant's 12.2% hearing loss is attributable to Claimant's job with Employer. (WCJ's Findings of Fact, Nos. 3(a)–3(e).)

Employer presented the deposition testimony of Arnold K. Brenman, M.D., who examined Claimant on December 15, 1994. Dr. Brenman concluded that Claimant had a hearing loss consistent with noise exposure. Based on his own audiogram, Dr. Brenman testified that Claimant's impairment is 10.6%. (WCJ's Findings of Fact, Nos. 4(a)–4(b).)

After reviewing the evidence, the WCJ found the testimony of Dr. Kean to be more credible than that of Dr. Brenman. The WCJ concluded that Claimant established an occupational hearing loss and that Claimant was entitled to 12.2% of the applicable compensation rate for a period of 260 weeks. Employer appealed to the WCAB, which affirmed the WCJ's decision.

On appeal to this court,[1] Employer argues that the credible medical testimony of Dr. Kean does not support the WCJ's finding that Claimant sustained an occupational binaural hearing impairment of 12.2%. Employer contends that, on cross-examination, Dr. Kean admitted that Claimant had a hearing impairment from non-occupational causes when he started work in 1969 and that Claimant's actual hearing impairment from work noise was 4.375%. We disagree.

Section 306(c)(8)(i) of the Workers' Compensation Act[2] (Act) states that, in cases involving "permanent loss of hearing which is medically established as an occupational hearing loss caused by long-term exposure to hazardous occupational noise, the per-

---

1. Our scope of review is limited to determining whether constitutional rights were violated, whether an error of law was committed or whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704.

2. Act of June 2, 1915, P.L. 736, as amended, 77 P.S. § 513(8)(i).

centage of impairment shall be calculated by using the binaural formula provided in the Impairment Guides."[3] 77 P.S. § 513(8)(i). Section 306(c)(8)(vi) of the Act states: "An employer shall be liable only for the hearing impairment caused by such employer. If ... hearing impairment from non[-]occupational causes is established at or prior to the time of employment, the employer shall not be liable for the hearing impairment so established...." 77 P.S. § 513(8)(vi).

Here, Dr. Kean testified that, based on Claimant's 1969 audiogram, Claimant had "[z]ero percentage impairment" when he began working for Employer. (R.R. at 53a.) On cross-examination, Dr. Kean explained that "there was no impairment according to the AMA [American Medical Association] 1993 formula."[4] (R.R. at 54a.) Dr. Kean further explained that, although Claimant had some "hearing loss" in 1969, there was "zero impairment" based on the AMA formula. (R.R. at 58a–59a.) Thus, Dr. Kean subtracted zero from Claimant's current hearing impairment of 12.2% and concluded that the entire 12.2% impairment was the result of Claimant's exposure to hazardous occupational noise. Such testimony constitutes substantial evidence to support the WCJ's

finding that Claimant sustained a 12.2% occupational hearing impairment.[5]

Accordingly, we affirm.

### O R D E R

AND NOW, this 14th day of November, 2000, the order of the Workers' Compensation Appeal Board, dated March 28, 2000, is hereby affirmed.

---

3. The term "Impairment Guides" means the American Medical Association's (AMA) Guides to the Evaluation of Permanent Impairment, Fourth Edition (June 1993). Section 105.5 of the Act, added by section 1 of the Act of February 23, 1995, P.L. 1, 77 P.S. § 25.5.

4. We note that, according to section 9.1a(7) of the AMA's Impairment Guides, if the average of a patient's hearing levels at 500, 1000, 2000 and 3000 hertz (Hz) is 25 decibels (dB) or less, no impairment is considered to exist in the ability to hear everyday sounds under everyday listening conditions.

5. We recognize that Employer disagrees with Dr. Kean's method of calculating the percentage of hearing "impairment" attributable to occupational noise. Instead of subtracting Claimant's "impairment" in 1969 from

Claimant's current "impairment," as Dr. Kean did, Employer would subtract Claimant's hearing loss at various frequencies in 1969 from Claimant's current hearing loss at those same frequencies *before* calculating "impairment" pursuant to the AMA formula.

We reject Employer's method of calculation for two reasons. First, it is not the method set forth in the AMA Impairment Guides. Second, under section 306(c)(8)(vi) of the Act, an employer must establish non-occupational hearing "impairment" at or prior to the time of employment to escape liability. Dr. Kean's testimony was that, based on the AMA Impairment Guides, Claimant had zero "impairment" in 1969. Even if Dr. Kean agreed with Employer's method in the final analysis, the law requires this court to follow the AMA formula. We note that Dr. Kean's last words on the subject were: "Don't blame me [for the AMA formula]." (*See* R.R. at 60a .)