Sam RICHCREEK, Petitioner,

v.

**WORKERS' COMPENSATION APPEAL BOARD (YORK INTERNATIONAL CORP.), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Aug. 10, 2001.

Decided Nov. 15, 2001.

Fred M. Feder, Philadelphia, for petitioner.

Thomas F. Meister, York, for respondent.

Before PELLEGRINI, Judge, FRIEDMAN, Judge, FLAHERTY, Senior Judge.

FLAHERTY, Senior Judge.

Sam Richcreek (Claimant) petitions for review from an order of the Workers' Compensation Appeal Board (Board) which affirmed the decision of the Workers' Compensation Judge (WCJ) denying Claimant's petition for hearing loss benefits. We affirm.

On August 23, 1996, Claimant filed a claim petition alleging that as of August 21, 1996, he sustained an occupational hearing loss due to exposure to hazardous occupational noise during the course and scope of his employment with York International Corporation (Employer).[1] Employer denied the allegations and the case was assigned to a WCJ.

At the WCJ's hearing, Claimant testified that he began working for Employer in 1965 as a crane and forklift operator. The job was noisy due to motors and cranes running up and down the tracks. After eight months, Claimant left his employment with Employer and returned to his previous employer for a period of eighteen months where he loaded railroad cars. In 1967, Claimant returned to work for Employer as a welder/assembler. His duties include welding parts together, using a sledgehammer, chisel, air arc and torches. He testified that the job is noisy and that he wears hearing protection. According to Claimant, he has difficulty communicating with fellow workers because of the noise at work. Approximately fifteen years ago, Claimant began noticing a hearing loss. Claimant stated that the hearing in his right ear is worse than that in his left ear.

In support of his claim petition, Claimant presented the report of Dr. Steven Ladenheim, who evaluated the Claimant for a hearing loss on May 7, 1997. Dr. Ladenheim stated that Claimant had a mild to severe mixed hearing loss and that using the American Medical Association (AMA) guidelines, Claimant suffered a 16.88 percent hearing loss in his right ear, a 13.13 percent loss in his left ear and a bilateral loss of 13.75 percent. Dr. Ladenheim opined that the sensorineural component of Claimant's hearing loss resulted from the high level of noise Claimant was exposed to while working for Employer.

In opposition to the claim petition, Employer introduced the report of Dr. Peter L. Zemo, who examined Claimant on September 25, 1997. Dr. Zemo opined that Claimant had a precipitous high-tone sensorineural hearing loss in both ears. In addition, at lower frequencies Claimant had a bilateral conductive loss, which Dr. Zemo clinically diagnosed as otosclerosis.[2] Using the AMA guidelines, Dr. Zemo opined that Claimant had a binaural impairment of 20.6%. However, Dr. Zemo further indicated that it was necessary to use bone conduction studies to assess Claimant's sensineural function because the conductive component or otosclerosis is

---

1. Claimant's claim petition was filed pursuant to Section 410 of the Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 751.

2. Otosclerosis is defined as "[a] new formation of spongy bone about the stapes and fenestra vestibuli (ovalis), resulting in progressively increasing deafness, without signs of disease in the eustachian tube or tympanic membrane." *Stedman's Medical Dictionary* 1273 (26th ed.1995).

not caused by noise. Using the bone conduction scores, Dr. Zemo calculated that Claimant had a binaural disability of 7.5 percent.

The WCJ credited the report of Dr. Zemo that Claimant suffered a 7.5 percent binaural hearing loss related to noise exposure, which does not meet the requirement of 10 percent under Section 306(c)(8)(iii) to prevail in an award for specific loss benefits. According to the WCJ, Dr. Zemo looked at Claimant's total history along with available audiogram results and provided reasoning that was unequivocal. The WCJ found Dr. Ladenheim credible in part and not credible in part. Although Dr. Ladenheim opined that Claimant suffered a hearing loss that was both noise induced and due to Claimant's physical conditions, Dr. Ladenheim failed to explain the mixed hearing loss. On appeal the Board affirmed.

Before this court, Claimant argues that the WCJ erred in relying on Dr. Zemo's method of using Claimant's bone conduction scores to calculate his hearing impairment. We first observe that Section 306(c)(8) of the Act, was amended by Act I, Act of February 23, 1995, P.L. 1, 77 P.S. § 513(8), and contains the hearing loss amendments. Section 306(c)(8)(i) of the Act states that, in cases involving "permanent loss of hearing which is medically established as an occupational hearing loss caused by long-term exposure to hazardous occupational noise, the percentage of impairment shall be calculated by using the binaural formula provided in the Impairment Guides." [3] However, Section 306(c)(8)(vi) of the Act, states that an employer is "liable only for the hearing impairment caused by such employer...."

Claimant argues that the Act does not permit bone conduction testing to be used to calculate a claimant's hearing loss because Section 306(c)(8)(i) of the Act provides that the percentage of impairment shall be calculated using the AMA Impairment Guides and the Impairment Guides measure a claimant's hearing loss using air conduction studies, not bone conduction studies. In this case, Dr. Zemo calculated Claimant's hearing loss under the AMA Guides and determined that his hearing loss was 20.6 percent. In addition to concluding that Claimant had precipitous hightone sensorineural loss in both ears, which is attributable to noise exposure, Dr. Zemo also concluded, based on the pure tone air test, that Claimant had a bilateral hearing loss of hearing at lower frequencies and concluded that this loss was due to otosclerosis, which is not related to noise exposure. Dr. Zemo conducted a bone conduction test to assess his sensorineural function because the conductive component is not related to noise exposure. As a result of the testing, Dr. Zemo concluded that Claimant had a sensorineural loss, related to noise exposure, of 7.5 percent.

We begin our analysis as to whether a deduction can be made for Claimant's otosclerosis by reviewing the Pennsylvania Supreme Court's decision in *LTV Steel Company v. Workers' Compensation Appeal Board (Mozena)*, 562 Pa. 205, 754 A.2d 666 (2000). In *Mozena*, the Court addressed the issue of whether a deduction should be taken for a claimant's hearing loss, which is attributable to age. The Court observed that the Act does not require such a deduction and there is "no reliable scientific (controlled) means of quantifying how aging, impairs the hearing of a given individ-

---

**3.** The term "Impairment Guides" means the AMA's Guides to the Evaluation of Permanent Impairment, Fourth Edition (June 1993).

Section 105.5 of the Act, added by Section I of the Act of February 23, 1995, P.L. 1, 77 P.S. § 25.5.

ual." *Id.* at 223, 754 A.2d at 675. Because there are only general statistical formulas and no true method for calculating the effects of aging, the Court determined that no deduction for age related hearing loss should be made when determining a claimant's hearing impairment. The Court also stated, however, that "the effect of many other nonoccupational factors are quantifiable. Courts have reduced an employer's responsibility for benefits where it is established that a nonwork-related cause was the substantial contributing factor of hearing impairment." *Id.* at 223, 754 A.2d at 675–76. The Court further stated that "[w]e find no merit to the contention by LTV that the decision .... precludes employers from presenting evidence of all nonoccupational causes. Where the nonoccupational causes of a specific individual's hearing impairment is quantifiable using the AMA Guides, either side may present evidence of the percentage of loss." *Id.*

■ As such, in accordance with *Mozena,* a deduction may be made for nonoccupational factors that affect an individual's hearing. As to whether the results of a bone conduction test may be used, we observe that in *Mozena,* the Court stated the following with respect to audiograms and the difference between bone conduction and air conduction tests:

> The basic hearing test, or audiogram, uses controlled auditory stimulus to measure the level of detection in a patient. 1 OTOLARYNGOLOGY 256 (Michael M. Paparella, M.D. et al. eds, 3rd ed.1991). A trained audiologist administers an audiogram to the patient. OTO-RHINOLARYNGOLGY: HEAD AND NECK SURGERY 971 (John Jacob Ballenger & James B. Snow, Jr., eds., 15th ed 1996). A complete audiogram will test both the bone conduction (the ability to hear a sound when it [is] transmitted through the bone) and the air con-

duction (the ability to hear a sound when it is transmitted through the air). DEWESSE AND SAUNDERS' OTOLARYNGOLOGY—HEAD AND NECK SURGERY 380–81 (David E. Schuller, M.D. & Alexander J. Schleuning, III, M.D. eds., 8th ed.1994). A comparison between these two types of conduction can be very useful in localizing which part of the hearing mechanism is responsible for the loss. OTORHINO-LARYNGOLGY, supra, at 953–56. In particular, the test is useful in determining if the loss is due to a problem[ ] with the portion of the middle ear that conducts sound from the ear canal to the inner ear (in which case it would be called a "conductive" hearing loss) or if it is due to the inner ear or the nerve that conducts the sound signals to the brain (in which case it would be called a "sensorineural" hearing loss). *Id.*

*Id.* at 211, n. 5, 754 A.2d at 669, n. 5. As previously stated Dr. Zemo did calculate Claimant's hearing loss in accordance with the AMA Guides, which requires a pure tone, air conduction test. An employer nonetheless may introduce evidence that the hearing loss is not work-related. "Just because [the doctor] utilized the AMA Guides does not mean that any percentage of hearing loss found under that standard was work related. The AMA Guides only provide the standards against which any hearing loss is measured; it is for the medical expert to determine what percent of that is attributable to the workplace." *Washington Steel Corporation v. Workers' Compensation Appeal Board (Waugh),* 734 A.2d 81, 84 (Pa.Cmwlth.1999).

Subsequent to *Mozena,* this court decided *Bethlehem Steel Corp. v. Workers' Compensation Appeal Board (Graaf),* 768 A.2d 1237 (Pa.Cmwlth.2001), which involved the results of both an air conduction and bone conduction test. In that case, the WCJ

credited the testimony of the employer's doctor that based on an audiogram, the claimant suffered a 17.1 percent hearing loss. The employer argued, however, that the WCJ erred in not also considering the doctor's testimony that the claimant suffered from non-occupational hearing loss, which when measured by a bone conduction test, resulted in an impairment of 13.4 percent. In addressing the employer's argument, this court observed that the WCJ is the ultimate finder of fact and the arbiter of credibility and weight and can accept or reject the testimony of any witness. *Graaf,* 768 A.2d at 1240, (*citing, Jordan v. Workmen's Compensation Appeal Board (Consolidated Electrical Distributors),* 550 Pa. 232, 704 A.2d 1063 (1997)). In *Graaf,* we stated that "the Employer failed to prove that a non-occupational cause impaired Claimant's hearing to an extent that required a deduction. Therefore, the WCJ [was] free to accept the portion of Dr. Brennan's testimony, which calculated Claimant's binaural hearing loss at 17.2%." *Graaf,* 768 A.2d at 1240.

■ In accordance with *Graaf,* it is for the WCJ to determine whether a non-occupational cause has impaired a claimant's hearing such that a deduction is required. Here, the WCJ credited the testimony of Employer's doctor that a non-occupational cause, otosclerosis, impaired Claimant's hearing to an extent that required a deduction. As observed by the Supreme Court in *Mozena,* a bone conduction test, along with an air conduction test, constitutes a complete audiogram and a comparison of the two is useful in determining whether the hearing loss is conductive or sensorineural. Here, Dr. Zemo quantified the Claimant's hearing loss through the use of bone conduction and air conduction tests and we find no error in the WCJ's reliance upon Dr. Zemo's testimony.

Claimant also argues that in accordance with *The Budd Company v. Workers' Compensation Appeal Board (Curran),* 762 A.2d 419 (Pa.Cmwlth.2000), because Claimant's initial audiogram in 1970, revealed a zero percent impairment and his most recent audiogram in 1996 according to Dr. Zemo revealed a 24.4% impairment, Claimants' impairment, when properly calculated, is 24.4 percent (24.4 percent minus 0 percent). *Budd,* is distinguishable, however, in that the WCJ credited the testimony of the doctor that "the entire .... impairment was the result of Claimant's exposure to hazardous occupational noise." *Id.* at 421. Here, the WCJ credited the testimony of Dr. Zemo that Claimant's impairment was not entirely due to occupational noise. In fact, Dr. Zemo stated that Claimant's initial audiogram in 1970, evidenced a high tone loss, related to occupational noise, but using the AMA Guides, he had a zero percent hearing loss. "As you follow his audiograms the impairment starts to develop in low-tone loss beginning in 1992 and he appeared to have a 12.2 percent binaural change. As you follow this through my audiogram today, this was developing otosclerosis...." (R.R. at 64a.) Thus, the WCJ attributed Claimant's hearing loss to otosclerosis, not occupational noise.

In this case, Dr. Zemo concluded that the majority of Claimant's loss of hearing is a result of otosclerosis, which is not a result of noise exposure. The WCJ credited Dr. Zemo's diagnosis, and because it is supported by substantial evidence, we may not overturn the WCJ's decision.

In accordance with the above, the order of the Board is affirmed.

### ORDER

Now, November 15, 2001, the order of the Workers' Compensation Appeal Board,

dated March 12, 2001 at No. A99–0085, is
affirmed.