COOPER POWER SYSTEMS, Petitioner,

v.

WORKERS' COMPENSATION APPEAL
BOARD (McFARLAND),
Respondent.

Commonwealth Court of Pennsylvania.

Argued Nov. 16, 1998.

Decided Dec. 23, 1998.

Carl S. Smith, Jr., Washington, for petitioner.

John T. Hofrichter, Washington, for respondent.

Before DOYLE, J., KELLEY, J., and NARICK, Senior Judge.

NARICK, Senior Judge.

This appeal presents two issues for our review. First, whether the Workers' Compensation Judge (WCJ) erroneously discredited relevant causation evidence in resolving Claimant's hearing loss claim, and second, whether the WCJ's decision satisfied the reasoned decision requirement of Section 422(a) of the Workers' Compensation Act (Act).[1]

---

1. Section 422(a) of the Workers' Compensation Act, Act of July 2, 1993, P.L. 190, *as amended*, 77 P.S. § 834.

Cooper Power Systems (Employer) appeals from an order of the Workers' Compensation Appeal Board (Board) that affirmed the decision and order of the WCJ, which found that Darryl McFarland (Claimant) suffered a compensable 12.5% work-related hearing loss.

On December 18, 1995, Claimant filed a claim petition alleging a permanent bilateral hearing loss resulting from hazardous occupational noise. The WCJ held a hearing on March 4, 1996 at which Claimant presented his own testimony and the medical report of Michael C. Bell, M.D.[2] Claimant testified that he worked in Employer's transformer assembly facility for more than 39 years. During his tenure with Employer, Claimant worked in the shipping department and held the positions of both small and large builder where he performed various tasks required in the assembly of small and large transformers, respectively. Claimant stated that during the majority of his career he was assigned to the large transformer unit. Claimant experienced a variety of hazardous occupational noises including noise from air guns, cranes, sledge hammers, heaters, testing machines and various other industrial equipment. Claimant also testified that he had no family history of hearing loss and that his non-occupational hazardous noise exposure was limited to rifle fire during annual deer hunts and marksmanship qualification when he entered the military reserve.

Employer submitted the medical report of Sidney N. Busis, M.D. at the second and final hearing held on June 3, 1996. Both doctors assessed Claimant's alleged auditory injury using the statutorily proscribed hearing impairment guidelines (Impairment Guides).[3]

Both doctors reported that Claimant suffered bilateral hearing impairment as defined by the Impairment Guides. Claimant's expert, Dr. Bell, reported that Claimant suffered a 12.5% work-related bilateral hearing loss. Employer's expert, Dr. Busis, reported that Claimant suffered a 15.3% bilateral hearing loss but attributed 5.78% of this loss to aging with at most 9.53% of the loss attributable to occupational noise. While both doctors agreed that the Impairment Guides showed Claimant suffered a hearing loss, Dr. Busis took the extra step of attributing a portion of Claimant's loss to aging based on the International Organization for Standardization ISO 1999 Guidelines (ISO Standard). Unlike the Impairment Guides, the ISO Standard is not incorporated into the Act by reference.

The WCJ issued a decision and order on March 12, 1997, finding that Claimant suffered a permanent 12.5% binaural hearing loss which was the direct result of noise exposure encountered during the course and scope of his work for Employer. The WCJ awarded Claimant benefits for 32.5 weeks at the compensation rate of $493.00 per week. The WCJ found the testimony of Claimant and the report of his medical expert, Dr. Bell, sufficient, competent and credible. The WCJ specifically discredited the report of Employer's medical expert, Dr. Busis. Employer timely appealed the WCJ's decision and order to the Board, which affirmed the grant of binaural hearing loss benefits. The Board's order, issued April 7, 1998, found that substantial evidence[4] exists in the record to support the findings and credibility determinations of the WCJ. Employer now appeals the Board's order to this Court.[5]

2. Section 422(c) of the Act provides that for compensation claims of 52 weeks or less, either party may submit certificates or reports by health care providers describing their examination, diagnosis, treatment and cause of a patient's condition. Such certificates or reports may be offered in lieu of sworn, cross examined testimony and such reports shall be admitted and may be relied upon by the WCJ in making findings of fact. 77 P.S. § 835.

3. Section 105.5 of the Act provides that "[t]he term 'Impairment Guides' as used in this act, means the American Medical Association's guides to the evaluation of permanent impair-

ment, fourth edition (June 1993)." Section 105.5 of the Workers' Compensation Act, added by the Act of February 22, 1995, P.L. 1, 77 P.S. § 25.5.

4. Substantial evidence has been defined as such relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Pavonarius v. Workers' Compensation Appeal Board (Samuel Levitt Sheet Metal, Inc.)*, 714 A.2d 1135 (Pa.Cmwlth.1998).

5. Our scope of review is limited to determining whether constitutional rights were violated, errors of law were committed or whether neces-

This case falls under the purview of the hearing loss provisions of § 306(c)(8), as amended by Act 1 of 1995.[6] Under the Act's original hearing loss provision, a claimant had to experience complete work-induced hearing loss in either one or both ears in order to be eligible for compensation benefits.[7] The revised § 306(c)(8)(I) provides in pertinent part: "For permanent loss of hearing which is medically established as an occupational hearing loss caused by long-term exposure to hazardous occupational noise, the percentage of impairment shall be calculated by using the binaural formula provided in the impairment guides." 77 P.S. § 513(8)(i). This amendment to the Act essentially created a sliding scale of compensation based on the degree of work-related hearing loss as established through medical testimony.[8] Compensation is payable proportionate to the degree of hearing loss ranging between 10%–75%. Hearing loss of 10% or less is not compensable and hearing loss of 75% or more constitutes total disability under the Act. 77 P.S. § 513(8)(iii).

Employer offers the argument that the WCJ erred as a matter of law by not considering relevant evidence addressing the issue of work-related causation. Specifically, Employer argues that Dr. Busis properly applied the ISO Standard and determined that 5.78% of Claimant's hearing loss is attributable to aging and, therefore, not related to his employment. Employer asserts that this leaves only 9.53% of Claimant's hearing loss that can possibly be attributed to his employment. Employer maintains that Claimant is not entitled to any benefits pursuant to § 306(c)(8)(III), which requires that a claimant reach the threshold of 10% binaural hear-

ing loss in order to qualify for benefits. Employer further asserts that in erroneously rejecting this uncontroverted causation evidence, the WCJ provided an irrational explanation in violation of the reasoned decision provision of the Act.[9]

Claimant counters that this case ultimately resolves as a substantial evidence and credibility case and that Employer's causation analysis amounts to a veiled attack on the WCJ's credibility determinations. We agree. Both doctors evaluated Claimant's hearing according to the standards and procedures set forth in the Impairment Guides. Both doctors found that Claimant's binaural hearing loss exceeded the 10% threshold required to qualify for benefits under the Act. Dr. Bell determined that Claimant suffered a 12.5% binaural hearing impairment while Dr. Busis concluded that Claimant suffered a 15.3% binaural hearing impairment. However, the opinions of the doctors diverge when they reach the issue of causation. Dr. Bell addressed the issue of causation as follows:

> Thus, it is my opinion within a reasonable degree of medical certainty that [Claimant] has been exposed to sufficient industrial noise to constitute an occupational noise hazard.
>
> It is also my opinion within a reasonable degree of medical certainty based on the history, physical exam, and audiometric test results that [Claimant] has suffered a bilateral ... hearing loss secondary to his cumulative exposure to loud noises during all of his [tenure with Employer].[10]

In addressing the issue of causation Dr. Busis attributed part of the hearing loss to occupational noise and the remainder to non-

---

sary findings of fact are supported by substantial competent evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704.

6. Section 306(c)(8) of the Workers' Compensation Act, Act of February 22, 1995, P.L. 1, 77 P.S. § 513(8).

7. Prior to Act 1 of 1995, § 306(c)(8) provided in its entirety as follows: "For the complete loss of hearing, in both ears, sixty-six and two-thirds per centum of wages during two hundred sixty weeks; for complete loss of hearing in one ear, sixty-six and two-thirds per centum of wages during sixty weeks."

8. In addressing Act 1 of 1995, the Pennsylvania Supreme Court recently recognized that Act 1 changed the standard for determining specific loss of use of hearing. The Act now provides benefits for permanent partial and total loss of hearing by "multiplying the maximum number of weeks by the percentage of hearing impairment as demonstrated by audiogram testing...." *Bible v. Department of Labor and Industry*, 548 Pa. 247, 696 A.2d 1149 (1997).

9. 77 P.S. § 834.

10. Medical Report of Dr. Bell, at 2, R.R. at 52a–53a.

work factors. Specifically, Dr. Busis addressed Claimant's hearing loss as follows:

On the basis of the [ISO Standard], [Claimant's] binaural hearing impairment of 15.3% represents 5.78% due to aging and 9.53% due to other causes.

As to causation of [Claimant's] hearing loss, his low-frequency loss at 500Hz is not due to occupational noise but to other inner ear pathology. His high-frequency loss could be noise induced due to noise exposure both in the work-place and in recreational activities.... Aging and possibly heredity also contribute to [Claimant's] hearing impairment.[11]

■■■ The WCJ is free to accept or reject the testimony of any witness in whole or in part, including medical witnesses. *Sellari v. Workers' Compensation Appeal Board (NGK Metals Corp.)*, 698 A.2d 1372 (Pa.Cmwlth. 1997). The WCJ found Claimant's evidence to be more credible than Employer's evidence. Through this credibility determination, the WCJ accepted Dr. Bell's causation analysis and rejected that of Dr. Busis. It would not matter if Employer's expert determined that Claimant's entire hearing loss was attributable to aging as defined by the ISO Standard, the WCJ rejected Dr. Busis' causation assessment and chose to credit Dr. Bell's opinion. Once a WCJ determines witness credibility and makes factual findings that are supported by substantial evidence, the only remaining requirement is to adequately explain how the credibility determinations were reached. *See Hahnemann University Hospital v. Workers' Compensation Appeal Board (Wallace)*, 718 A.2d 391 (Pa.Cmwlth.1998). Employer asserts that the WCJ's rejection of its medical causation evidence somehow amounts to a violation of Act 1 of 1995. Specifically, Employer states that:

[T]he amending language of Act 1 of 1995 states plainly that only hearing losses which are 'medically established' to have been caused by long term exposure to hazardous occupational noise are compensable under the Act. Nothing in the amending language of Act 1 1995 can be read as prohibiting or excluding a medical determination as to causation of hearing impairment.[12]

This curious argument ignores the fact that nothing is "medically established" until the WCJ determines that the offering witness is credible and accepts the evidence as fact. The mere presentation of uncontroverted causation evidence does not necessitate that the WCJ accept it as fact. Employer's "I offered it; therefore it is established" approach to resolving issues of evidentiary weight and credibility has no basis in our Workers' Compensation law. *See Greenwich Collieries v. Workers' Compensation Appeal Board (Buck)*, 664 A.2d 703 (Pa.Cmwlth. 1995). Our review of the record shows that the WCJ carefully considered the evidence, made factual findings with the requisite measure of support in the record and resolved the issue of credibility, which we may not disturb on appeal.

■■■ Turning now to Employer's alternate argument that the WCJ did not provide a reasoned decision, we agree with the Board that the WCJ's decision complies with the requirements of § 422(a) of the Act. Section 422(a) provides in pertinent part:

The [WCJ] shall specify the evidence upon which the [WCJ] relies and state the reasons for accepting it in conformity with this section. When faced with conflicting evidence, the [WCJ] must adequately explain the reasons for rejecting or discrediting competent evidence. Uncontroverted evidence may not be rejected for no reason or for an irrational reason; the [WCJ] must identify that evidence and explain adequately the reasons for its rejection.[13]

In discrediting Employers' medical evidence, the WCJ explained that Dr. Busis' report was internally inconsistent and that he reached conclusions without any apparent basis. The WCJ sufficiently explained her reasoning in finding:

[T]he report of Dr. Busis is not internally consistent. Dr. Busis relates an examina-

11. Medical Report of Dr. Busis, at 3, R.R. at 63a.

12. Employer's Brief at 8.

13. 77 P.S. § 834.

tion of [Claimant] ... which he states revealed no abnormalities; however, later in the same report, Dr. Busis states that [Claimant's] low frequency loss at 500 hertz is due to what he describes as ' ... other ear pathology.' The court notes that this pathology was never discussed or identified by Dr. Busis and seems to directly conflict with his statement that [Claimant's] examination was normal. Dr. Busis does opine that [Claimant] may have some loss as a result of noise exposure at [Employer's facility], but Dr. Busis states that aging and possibly hereditary have contributed to [Claimant's] hearing impairment. This [WCJ] notes that there exists no history anywhere on the record indicating that [Claimant] had a family history of hearing loss, and in fact, [Claimant] has consistently maintained no history of family hearing loss.... [14]

Employer avers that "the [WCJ's] explanations for her decision to reject Dr. Busis' uncontroverted opinions on the issue of adjusting percentages for aging are irrational reasons which do not satisfy the requirement set forth at § 422(a) of the Act." (Employer's Brief at 12). The WCJ explained her reason for rejecting Employer's ISO Standard age reduction evidence as follows:

> Dr. Busis discussed the application of the [ISO Standard] in both [doctors'] reports and this [WCJ] notes that the application of this standard is used to reduce or discount a percentage of hearing loss by attributing a set percentage to age without any consideration whatsoever of [Claimant's] specific noise exposure or physical history. Act 1 of 1995 does not specify if we are to deduct for age factor and, if so, how or by what method or standard.[15]

■ The WCJ's decision to refrain from applying an across-the-board hearing loss age reduction without direction from the General Assembly to do so, does not constitute an irrational reason for rejecting Employer's theory of causation. As the WCJ pointed out, the General Assembly directed physicians to employ the American Medical Association Impairment Guides in assessing hearing loss for worker's compensation purposes. It is certainly reasonable for a WCJ to determine hearing loss compensability based on application of the standard specified in the Act. In *Hahnemann University Hospital v. Workers' Compensation Appeal Board (Wallace)*, 718 A.2d 391 (Pa.Cmwlth. 1998), we interpreted the reasoned decision provision of § 422 of the Act as requiring the WCJ to state his or her reasons for accepting certain evidence and adequately explain why competent, conflicting evidence was rejected or discredited. This interpretation applies equally to the uncontroverted ISO Standard evidence which Employer offered in this case. The WCJ's explanation of why she discredited Dr. Busis' report clearly satisfies the reasoned decision requirement of the Act.

Accordingly, we conclude that the Board correctly held that it was within the WCJ's discretion to reject Employer's medical causation evidence and that the WCJ's explanation of why she discredited Employer's medical expert satisfies the reason decision requirement of § 422(a) of the Act.

### ORDER

AND NOW, this 23rd day of December, 1998, the order of the Workers' Compensation Appeal Board, dated April 7, 1998 is hereby affirmed.

---

**14.** WCJ Decision, March 12, 1997, Finding of Fact No. 8, at 5, 6, R.R. at 11a, 12a.

**15.** Finding of Fact No. 8.