**WHEELING PITTSBURGH STEEL CORPORATION, Petitioner,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (BRUCE), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs March 14, 2003.

Decided June 19, 2003.

James D. Strader, Pittsburgh, for petitioner.

Daniel K. Bricmont, Pittsburgh, for respondent.

BEFORE: SMITH–RIBNER, Judge, LEAVITT, Judge, and MIRARCHI, JR., Senior Judge.

OPINION BY Judge LEAVITT.

Wheeling–Pittsburgh Steel Corporation (Employer) petitions for review of an adjudication of the Workers' Compensation Appeal Board (Board) granting the claim petition of Wayne Bruce (Claimant) for his work-related binaural hearing loss. In doing so, the Board affirmed the decision of the Workers' Compensation Judge (WCJ).

Claimant was hired by Employer in 1963, and for the next 37 years he served in various positions in Employer's mill where he was exposed on a daily basis to various loud noises, including the constant clanging of pipes being fabricated, the sound of overheard cranes and motorized hoists, the whining noise of the rolling mills and the noise of tractors without mufflers that Claimant operated throughout the mill. Communication with other workers was only possible by using hand signals or by shouting; this did not change throughout his employment.

On September 28, 2000, Claimant filed a claim petition alleging that he suffered a work-related binaural hearing loss greater than 10% due to continuous exposure to excessive noise in Employer's workplace. He asserted a right to compensation benefits pursuant to Section 306(c)(8)(iii) of the Workers' Compensation Act (Act).[1] Claimant first became aware of his hearing problems in approximately 1980 when he found it necessary to raise the volume on his television. Since that time, Claimant has noticed a continued, gradual hearing loss, making it difficult to use the telephone or to hear in crowds; further, he

---

1. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 513(8)(iii).

suffers from a constant ringing and humming in his ears.

In support of his petition, Claimant offered the medical report of Michael C. Bell, M.D., board-certified in otolaryngology, who examined Claimant on September 6, 2000. Dr. Bell used the American Medical Association's Guides to the Evaluation of Permanent Impairment, 4th Edition (June 1993) (Impairment Guides)[2] to evaluate the percentage of Claimant's hearing loss, which was found to be 13.125% in the right ear and 20.624% in the left ear.[3] This produced a binaural hearing loss of 14.325%. Dr. Bell opined that it was Claimant's exposure to loud noise in the workplace that caused his hearing impairment. Reproduced Record 43a–44a (R.R. ——).

In response, Employer offered the June 14, 2001, deposition of Douglas A. Chen, M.D., who is also board-certified in otolaryngology. Dr. Chen examined Claimant on February 22, 2001. Claimant provided a history[4] and submitted to audiometric testing by a qualified audiologist in Dr. Chen's office. Using the Impairment Guides, Dr. Chen determined Claimant's hearing loss to be 15% in the right ear and 20.63% in the left ear, with a binaural impairment of 15.9%. Dr. Chen found the results of the audiograms taken by his office and those taken in Dr. Bell's office to be compatible, and he opined that the best test is the one that best represents the patient's ability to hear. In this case, the best test was the one taken in Dr. Bell's office.

Dr. Chen acknowledged that Claimant's sensorineural hearing loss is the type of hearing loss that results from exposure to occupational noise. However, he stated that the predominant portion of a sensorineural hearing loss occurs during the first 10 to 15 years of noise exposure; thereafter, the rate of loss slows down. Dr. Chen noted that Claimant's hearing loss accelerated, starting in 1994 or 1995, when Claimant was fifty-three years old. Dr. Chen opined that a hearing loss that accelerates towards the end of a work experience, when a patient is getting older, represents an onset of age-induced hearing loss. This opinion was based upon a medical treatise by Robert Dobie, M.D., entitled MEDICAL–

---

2. The Impairment Guides are required by Section 306(c)(8)(i) of the Act, as added by Section 1 of the Act of February 23, 1995, P.L. 1. Section 306(c)(8)(i) provides:

> For permanent loss of hearing which is medically established as an occupational hearing loss caused by long-term exposure to hazardous occupational noise, *the percentage of impairment shall be calculated by using the binaural formula provided in the Impairment Guides.* ...

77 P.S. § 513(8)(i) (emphasis added). Section 105.5 of the Act, 77 P.S. § 25.5, provides: The term "Impairment Guides," as used in this act, means the American Medical Association's Guides to the Evaluation of Permanent Impairment, Fourth Edition (June 1993).

3. Dr. Bell's audiometric testing showed a bilateral high frequency sensorineural hearing loss above 1,000 hertz (Hz). R.R. 43a.

Speech reception thresholds were consistent with pure tone average. Discrimination scores at mean comfortable level were normal in the right ear and fair to good in the left ear.

4. Claimant's testimony was consistent with the notes of his examination by Dr. Bell. Claimant had no family history of hearing loss, had no diseases that could affect his hearing, did not use ototoxic drugs. He had never served in the military and did not use power tools at home, except for a power lawnmower. He was a hunter for 8 to 10 years, but he had not hunted for the last 20 years. When he hunted, he wore ear protection when he sighted the rifle, and would fire the gun three or four times per season. He had only shot six deer in his hunting career. He did not use guns, motorcycles or snowmobiles for recreational purposes. He did not play a musical instrument or listen to loud music. R.R. 15a–18a, 42a–43a.

Legal Evaluation of Hearing Loss, which Dr. Chen asserted is widely relied upon by otolaryngologists.

Dr. Chen opined that Claimant's pre–1994 hearing loss was caused by his exposure to rifle noise as well as other non-occupational noise, and to occupational noise. From 1994 to 2001, Claimant's accelerating hearing impairment was caused by Claimant's age. Dr. Chen concluded that Claimant's 5.63% hearing impairment through 1994 was caused by occupational and non-occupational noise factors, but that the 10.3% progression subsequent to 1994 was a result of Claimant's advancing age.

On cross-examination,[5] Dr. Chen admitted that his opinion that Claimant's hearing loss was caused by exposure to rifle noise is inconsistent with the fact that Claimant, as a left-handed shooter, would most likely experience greater hearing loss in the right ear because it is the ear closest to the barrel of the gun. Claimant's hearing loss in his left ear is the most severely impaired.[6] Dr. Chen offered no explanation for this inconsistency. Dr. Chen also offered no explanation for fluctuation in Claimant's hearing loss after 1994, where the tests showed a hearing loss of 26.56% in 1997 and a hearing loss of 14.38% in 2000, a notable improvement. Dr. Chen acknowledged that these recent tests showed that Claimant's hearing was gradually improving, but he could not relate this change to his theory that Claimant's hearing loss was caused by aging.

Based upon this evidence, the WCJ found that Claimant suffered a greater than 10% binaural hearing loss as a result of his years of exposure to noise while in the course of his employment with Employer. The WCJ specifically found the opinions of Dr. Bell to be more credible than those of Dr. Chen. The WCJ rejected Dr. Chen's contention that Claimant's hearing loss was the result of other causes.[7] The WCJ found that the occupational noise, alone, explained Claimant's hearing loss, and the hearing tests establish that Claimant suffered consistent and gradual hearing loss between June of 1983 and September of 2000.

■ Employer appealed, and the Board affirmed the WCJ's conclusion that Claimant had established that his hearing loss was a work-related injury. Employer then petitioned for our review.[8]

---

5. Also on cross-examination, Dr. Chen admitted to having never toured Employer's mill and having no independent information or knowledge of the noise levels in Claimant's work areas.

6. For the first five or six years of his employment, Claimant operated a rotary hammer in the Tube Mill. The hammers were located just left of Claimant's work area and produced a constant clanging noise as the metal pipes were configured with metal dies. This exposure would appear to support a hearing loss on the left side. Workers in that area were forced to use hand signals in order to communicate over the noise, and did not wear any hearing protection and Claimant experienced an inability to hear for the first sixty to ninety minutes at the end of the work day. R.R. 20–1a.

7. The WCJ found rifle noise not to be a factor in Claimant's hearing loss in light of the evidence that Claimant's left ear, the one farthest from the gun barrel, demonstrates a greater hearing loss. The WCJ also rejected Dr. Chen's contention that non-occupational noise was a contributing factor because he credited Claimant's testimony on the level of non-occupational noise to which he was exposed. Indeed, the WCJ found Dr. Chen's credibility particularly questionable on causation. Further, Employer did not offer any evidence to suggest that average non-occupational noise exposure was a significant contributing factor in hearing loss.

8. This Court's review is limited to a determination of whether an error of law was committed, whether necessary findings of fact are supported by substantial evidence, or whether

On appeal, Employer contends that the WCJ erred in determining that Dr. Chen's testimony failed to establish that a significant portion of Claimant's hearing loss was non-work-related and due to age-related factors. Employer asserts that the Board erred in relying upon *LTV Steel Company, Inc. v. Workers' Compensation Appeal Board (Mozena)*, 562 Pa. 205, 754 A.2d 666 (2000), to preclude a finding of age-related hearing loss. Employer contends that *Mozena* only precludes using a tabular formula to calculate age-related hearing loss. Employer argues that Claimant failed to establish that the percentage of his hearing loss caused by occupational noise exceeded 10% as required by the Act, and, therefore, a finding of liability on Claimant's petition was improper.[9] Essentially, Employer's argument comes down to whether the conclusions of the WCJ were supported by substantial evidence.

In *Mozena*, our Supreme Court affirmed this Court's determination that the General Assembly did not intend to allow an age-related deduction from the total percentage of hearing impairment.[10] The Supreme Court explained that presbycusis[11] is distinguishable from other nonoccupational factors relating to hearing loss. The effect of many nonoccupational factors is quantifiable, but there is no reliable scientific means to quantify the effect of aging upon an individual's hearing loss. *Mozena*, 562 Pa. at 223, 754 A.2d at 675. The legislature specifically provided that the Impairment Guides are the only standard to be used to quantify hearing impairment, and they do not provide a standard of measurement for presbycusis. Thus, the Supreme Court held:

> The consideration of the history of Section 306(c)(8)(iii) and the fact that the plain language of Act 1 does not allow for an age-related deduction indicates that the General Assembly did not intend to allow an age-related deduction from the total percentage of hearing impairment.

*Mozena*, 562 Pa. at 222, 754 A.2d at 675.

The WCJ, as fact finder, has exclusive power over questions of credibility and evidentiary weight and, thus, may accept or reject the testimony of any witness, in whole or in part. *Mardee Sportswear v. Workmen's Compensation Appeal Board (Franglo, Inc)*, 98 Pa.Cmwlth.327, 511 A.2d 905 (1986). A WCJ may dismiss an entire school of science if he determines that it lacks credibility. *Mozena*, 562 Pa. at 224, 754 A.2d at 676. Section 306(c)(8)(vi)[12] of the Act provides for a

---

constitutional rights were violated. *Vinglinsky v. Workmen's Compensation Appeal Board (Penn Installation)*, 139 Pa.Cmwlth.15, 589 A.2d 291 (1991). This standard is mandated by the Administrative Agency Law, 2 Pa.C.S. § 704.

9. In a claim for occupational noise-induced hearing loss, the claimant must shoulder the burden of proving not only the degree of hearing loss but also that the hearing loss was caused by the claimant's employment. *Rockwell International v. Workers' Compensation Appeal Board (Sutton)*, 736 A.2d 742 (Pa. Cmwlth.1999).

10. The Supreme Court consolidated appeals from *LTV Steel Company, Inc. v. Workers'*

*Compensation Appeal Board (Mozena)*, 727 A.2d 160, 165 (Pa.Cmwlth.1999) and *USX Corporation v. Workers' Compensation Appeal Board (Rich)*, 727 A.2d 165 (Pa.Cmwlth.1999), and rendered a single opinion that controls the outcome of the issue of whether employers are precluded from offering evidence of age-related causation of hearing impairment.

11. Hearing loss caused by aging, *i.e.*, wear and tear within the ear, is referred to as presbycusis. The etymology of "presbycusis" is explained *Mozena*, 562 Pa. at 212, 754 A.2d at 669, n. 6.

12. Section 306(c)(8)(vi) of the Act, 77 P.S. § 513(8)(vi), states:

reduction of an employer's responsibility for benefits where it establishes that a nonwork-related cause was the substantial contributing factor of hearing impairment. *See, e.g. Washington Steel Corp. v. Workers' Compensation Appeal Board (Waugh)*, 734 A.2d 81 (Pa.Cmwlth.1999) (hunting was primary cause of hearing loss). Where the nonoccupational cause of a specific individual's hearing impairment is quantifiable using the Impairment Guides, either side may present evidence of the percentage of loss. *Mozena,* 562 Pa. at 223, 754 A.2d at 676.

Here, Employer has failed to present substantial evidence of a nonoccupational cause for Claimant's hearing loss. The WCJ rejected Dr. Chen's attempt to assign Claimant's hearing loss to rifle noise or to age, using a theory not recognized in the Impairment Guides. It is the exclusive province of the WCJ to make findings of credibility and evidentiary weight. Employer cannot, under present Pennsylvania law, deduct that portion of the impairment caused by presbycusis from the total binaural hearing impairment. *Mozena,* 562 Pa. at 226, 754 A.2d at 677. Further, Employer failed to present evidence of another nonoccupational cause of Claimant's hearing impairment. In sum, the substantial evidence of Claimant's long-term exposure to continuous occupational noise supports the conclusions of the WCJ and the Board.

■ Finally, Claimant requests that this Court grant him attorneys' fees under Pa. R.A.P. 2744 because Employer's appeal was frivolous because it rested on the credibility determinations of the WCJ. Pa. R.A.P. 2744 provides that,

> [A]n appellate court may award as further costs damages as may be just, including (1) a reasonable counsel fee and (2) damages for delay at the rate of 6% per annum in addition to legal interest, if it determines that an appeal is frivolous or taken solely for delay or that the conduct of the participant against whom costs are to be imposed is dilatory, obdurate or vexatious. The appellate court may remand the case to the trial court to determine the amount of damages authorized by this rule.

Employer's appeal can be characterized as a challenge to a credibility determination made by the WCJ. However, it is also the case that Employer challenges the Board's interpretation and application of *Mozena* to disallow acceptance of Dr. Chen's methodology. Accordingly, we cannot conclude that the appeal was frivolous and warrants the imposition of attorney's fees.

For these reasons we affirm the decision of the Board.

### ORDER

AND NOW, this 19th day of June, 2003, the determination of the Workers' Compensation Appeal Board dated October 21, 2002, in the above-captioned matter is hereby affirmed.

> An employer shall be liable only for the hearing impairment caused by such employer. If previous occupational hearing impairment or hearing impairment from nonoccupational causes is established at or prior to the time of employment, the employer shall not be liable for the hearing impairment so established whether or not compensation has previously been paid or awarded.