**James McCLURE, Sr., Petitioner**

v.

**WORKERS' COMPENSATION APPEAL BOARD (CERRO FABRICATED PRODUCTS AND PMA GROUP), Respondents.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Aug. 26, 2011.

Decided Sept. 15, 2011.

Stephen J. O'Brien, Pittsburgh, for petitioner.

John B. Bechtol, Pittsburgh, for respondent Cerro Fabricated Products.

BEFORE: PELLEGRINI, Judge, and LEAVITT, Judge, and BUTLER, Judge.

OPINION BY Judge PELLEGRINI.

James McClure, Sr. (Claimant) petitions for review of the order of the Workers' Compensation Appeal Board (Board) affirming the decision of the Workers' Compensation Judge (WCJ) granting his claim petition for workers' compensation benefits but modifying the award of his medical benefits. For the reasons that follow, we affirm the Board's decision.

The facts of this case are not in dispute. Claimant began working for Accurate Forging Corporation/Delta American Inc. (Accurate) in its plant as a press operator in 1972. He continued working for the company when Accurate's assets were acquired by Cerro Fabricated Products (Cerro) on July 28, 2000. Claimant continued to perform the same job in the same plant for the same wages under the same collective bargaining agreement. Claimant was laid off by Cerro in 2003. Audiometric testing was performed on Claimant in 1997 indicating that he had a binaural hearing loss of 18.1%. Subsequent testing in July 2004 indicated a binaural hearing loss of 24.69%.

On November 19, 2004, Claimant filed a claim petition alleging that as of August 4, 2004, he sustained a hearing loss during the course and scope of his employment with Accurate and/or Cerro. On January 6, 2006, the WCJ issued an interlocutory order stating that Accurate would be dismissed as a party to the litigation when the final decision and order was issued in the case because Cerro was the successor-in-interest of Accurate and bore all responsibility for payment of benefits if Claimant prevailed on his claim petition. As to the merits of the claim, the WCJ found that Claimant had established a binaural hearing loss of 24.69% as the result of his total and cumulative exposure to hazardous noise while working for Accurate and Cerro and granted Claimant's petition. She ordered Cerro to pay Claimant all reasonable and necessary medical expenses.

Cerro appealed to the Board arguing that the WCJ erred as a matter of law in determining that it was the successor-in-interest of Accurate and responsible for all medical benefits. The Board agreed, vacating and remanding the matter to the WCJ to include Accurate as a party. On remand, the WCJ found that Claimant's claim petition against Accurate was time barred because his employment with Accurate ended on July 27, 2000, and his claim petition was not filed until August 31, 2004, more than three years after Claimant could have had occupational noise exposure during the course of his employment with Accurate.[1] The WCJ further found that Cerro was responsible for the 6.57% binaural hearing impairment due to occupational noise exposure on July 22, 2004. The WCJ stated in her findings that all parties reported that Cerro had already paid Claimant for the 18.12% hearing loss that she had previously ordered and ordered a credit for benefits paid. The WCJ ordered Cerro to pay all reasonable and necessary medical expenses related to Claimant's work-related hearing loss. Cerro and Claimant both appealed.

■ Claimant alleged that Cerro was a successor-in-interest to Accurate and should be required to compensate him for the 24.69% cumulative hearing loss, which the Board again rejected. Cerro argued that the WCJ erred by holding it responsible for 100% of Claimant's reasonable and necessary medical expenses based upon a 6.57% hearing loss, only a percentage apportional of the overall loss itself. The Board stated that while the same medical treatment and costs would be required whether the hearing loss was 24.69% or 6.57%, had Claimant timely perfected its claim against Accurate, the indemnity award would have been prorated. It then concluded that Cerro was responsible for 6.57% of the loss and 26.61% of all medical costs awarded under the Act. This appeal

1. Pursuant to Section 306(c)(viii) of the Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 513, "Whenever an occupational hearing loss caused by long-term exposure to hazardous occupational noise is the basis for compensation or additional compensation, the claim shall be barred unless a petition is filed within three years after the date of last exposure to hazardous occupational noise in the employ of the employer against whom benefits are sought." In *McIlnay v. Workers' Compensation Appeal Board (Standard Steel),* 870 A.2d 395 (Pa.Cmwlth.2005), we stated that in hearing loss cases, the date of injury was the last date of exposure to the hazardous noise. We specifically held that the "discovery rule" did not apply to hearing loss cases. In this case, the statute of limitations began to run when Claimant left the employ of Accurate in July 2000 because the company was sold to Cerro. Claimant's last date of exposure to hazardous noise at Accurate was in July 2000, making his claim petition against Accurate filed in January 2005 well outside the three-year statute of limitations.

by Claimant followed.[2]

Claimant raises two issues on appeal: 1) whether the Board erred by vacating and remanding the WCJ's decision which determined that Cerro was a successor-in-interest and, therefore, responsible for 100% of the binaural hearing loss incurred by him while the plant was run by Accurate and 2) whether the Board erred in modifying the WCJ's finding that Cerro was responsible for all reasonable and necessary medical expenses and, instead, finding Cerro only responsible for 26.61% of Claimant's related medical expenses.

**A.**

 Whether Cerro was successor-in-interest to Accurate "depends on the totality of the circumstances on how the plant or corporation is acquired; if the circumstances establish that the new owner is a successor-in-interest, it is not a new employer." *LTV Steel Company, Inc. v. Workers' Compensation Appeal Board (Mozena)*, 727 A.2d 160, 164 (Pa.Cmwlth. 1999), *affirmed*, 562 Pa. 205, 754 A.2d 666 (2000). In *LTV Steel*, a claimant suffered a hearing loss after working from 1957 to 2000 for a steel plant in Aliquippa, Pennsylvania. The claimant began working as a laborer with Jones & Laughlin Steel (J & L) in 1957. In 1974, LTV Corporation acquired 100% of the stock of J & L and merged J & L into its operations making J & L a wholly-owned subsidiary of LTV. When the claimant filed a claim petition alleging a hearing loss against LTV, it argued that it was not liable for the claimant's hearing loss that occurred before it merged with J & L in 1974 and most of the claimant's hearing loss occurred before 1974. We affirmed the WCJ's determina-

tion that LTV was a successor-in-interest rather than a new employer stating the following:

In this case, the WCJ found that Employer was a successor-in-interest because when LTV acquired J & L, it was a stock sale rather than an asset sale; it assumed all operations at the Aliquippa plant and retained all of J & L employees; it specifically agreed to assume liability for all of J & L's workers' compensation claims existing at the time of the merger; and it paid all workers' compensation claims that arose prior to 1974 when LTV acquired J & L. In other words, it assumed responsibility for all claims of J & L employees at the time of the merger, including Claimant. These facts provide substantial evidence upon which the WCJ could find that LTV was a successor and not a new employer, and responsible for all of Claimant's hearing loss.

727 A.2d at 164. In affirming our decision, our Supreme Court noted that the WCJ had found that LTV completed its stock purchase of J & L by November 1974; when LTV acquired J & L, LTV assumed all of the decision-making powers of the Aliquippa plant but continued to operate the facility under the J & L name; and LTV assumed all of J & L's assets as well as all of its liabilities, including its workers' compensation claims existing at the time of the 1974 merger. *See LTV Steel Company, Inc. v. Workers' Compensation Appeal Board (Mozena)*, 562 Pa. 205, 225, 754 A.2d 666, 677 (2000).

More recently, in *Hayduk v. Workers' Compensation Appeal Board (Bemis Co., Inc.)*, 906 A.2d 622 (Pa.Cmwlth.2006), a claimant who worked for 27 years in a

---

**2.** Our scope of review of a Board decision is limited to determining whether an error of law was committed, constitutional rights were violated or a necessary finding of fact was not supported by substantial evidence of record. *Griffiths v. Workers' Compensation Appeal Board (Seven Stars Farm, Inc.)*, 596 Pa. 317, 943 A.2d 242 (2008).

bakery filed a claim against his current employer, Bemis Company, alleging he suffered a hearing loss. During the years the claimant worked for the bakery, it had different owners. The WCJ found credible the testimony of the vice president of human resources for Bemis Company that Bemis Company had purchased only the assets of the former employer, Princeton, not Princeton or its liabilities, and Bemis specifically excluded workers' compensation liabilities that arose prior to the purchase of the assets in 1993. However, the WCJ determined that the Asset Purchase Agreement did not clearly address the situation posed by the claimant, i.e., whether a workers' compensation claim was covered by the agreement that was not at the time of Bemis' purchase known or fully materialized. Stating that the agreement only addressed liabilities for workers' compensation claims that were incurred on or prior to the closing date, the WCJ determined that Bemis was the successor-in-interest to Princeton. The Board reversed, concluding that Bemis was not the successor-in-interest to Princeton, and Bemis appealed to this Court.

We referred to our decision in *Mozena*, but noted that this case was factually different because there was no purchase of stock by Bemis as there was in *Mozena;* rather, there was only a purchase of certain assets. Relying on our Supreme Court decision in *Continental Insurance Company v. Schneider, Inc.*, 582 Pa. 591, 599–600, 873 A.2d 1286, 1291 (2005), a case dealing with the Uniform Commercial Code but also dealing with whether an employer was a successor-in-interest, we enunciated the following test for determining successor liability:

> With respect to successor liability in this Commonwealth, it is well-established that 'when one company sells or transfers all of its assets to another company, the purchasing or receiving company is not responsible for the debts and liabilities of the selling company simply because it acquired the seller's property.' ... This general rule of non-liability can be overcome, however, if it is established that (1) the purchaser expressly or implicitly agreed to assume liability, (2) the transaction amounted to a consolidation or merger, (3) the purchasing corporation was merely a continuation of the selling corporation, (4) the transaction was fraudulently entered into to escape liability, or (5) the transaction was without adequate consideration and no provisions were made for creditors of the selling corporation....

*Hayduk*, 906 A.2d at 632. Because none of those factors were met, we concluded that Bemis was not a successor-in-interest to Princeton.

■ Applying the *Hayduk* factors to this case, there was no merger or consolidation. The Asset Purchase Agreement provides that it was strictly a sale of assets between Accurate and Cerro and was not intended to be a sale of any liabilities. Article I of the agreement specifies:

> Section 1.1 *Agreement to Sell.* Upon and subject to the terms and conditions of this Agreement, at the Closing (as defined in Section 1.5) Sellers shall grant, sell, convey, assign, transfer and deliver to Purchaser all right, title and interest of Sellers in and to all of the assets, properties and rights of Sellers used in relation to the Sellers' Businesses, including, but not limited to, those assets described in Section 1.2, and excluding only the Excluded Assets (as defined in Section 1.3) (collectively, the "Sale Assets") free and clear of all mortgages liens, pledges, security, interests, charges, claims, restrictions and encumbrances of any nature whatsoever ...

(Asset Purchase Agreement at 1–2.) Under Section 1.4, in consideration for the sale of the assets, Cerro agreed to pay Accurate $18,250,000 subject to reduction in the event Cerro assumed pension plans. The agreement further indicates that seller had no intention of retaining any liabilities after the sale, specifically related to workers' compensation claims. Section 1.8 of the agreement deals with liabilities and subsection (b), titled *Retained Liabilities,* indicates that sellers would only retain the following liabilities:

> (iii) any suits, actions or claims relating to workers' compensation or otherwise to injury, disability or death occurring in the course of employment to any employees of any Seller *relating to periods on or prior to the Closing.*

(Asset Purchase Agreement at 10–11). (Emphasis added.)

Because there was no merger or consolidation, the transaction expressly excluded workers' compensation claims, there is no allegation that the transaction was fraud to escape liability to pay compensation or defraud creditors, and there was no indication that the sale was not for fair value, the Board properly determined that Cerro was not a successor-in-interest and not responsible for 100% of Claimant's binaural hearing loss.

### B.

As to medical expenses, Claimant argues that even if Cerro is not a successor-in-interest of Accurate, Cerro should be responsible for all of Claimant's medical expenses because Cerro was found to be partially responsible for his hearing loss, and it should not be left to him to bear any of those costs. However, the concept of joint and several liability for medical expenses involving hearing loss cases are not embodied in the Act. Section 306(f.1)(i) of the Act, 77 P.S. § 531(1)(i), provides, in pertinent part, that "[t]he employer shall provide payment in accordance with this section for reasonable surgical and medical services." Once it is determined that an employer is liable for an injury under the Act, the employer is required to pay a claimant's reasonable and necessary medical expenses that are causally related to the injury. *Martin v. Workers' Compensation Appeal Board (Red Rose Transit Authority),* 783 A.2d 384 (Pa.Cmwlth. 2001). Regarding hearing loss responsibility, Section 306(c)(8)(iv) of the Act provides:

> An employer shall be liable only for the hearing impairment caused by such employer. If previous occupational hearing impairment or hearing impairment from nonoccupational causes is established at or prior to the time of employment, the employer shall not be liable for the hearing impairment so established whether or not compensation has previously been paid or awarded.

77 P.S. § 513(8)(vi).[3] Cerro argues, though, that this section specifies that it is only responsible for its portion of Claimant's hearing loss, and there is no reason that this section should not apply as well

---

**3.** The Board stated that it also found support for its decision in Section 322 of the Act, 77 P.S. § 677, which deals with payment of workers' compensation on a pro-rata basis where an employee suffers from more than one injury while in the employ of more than one employer. ("Nothing in this section shall be deemed to prohibit payment of workers' compensation on a pro-rata basis, where an employe suffers from more than one injury while in the employ of more than one employer.") This section does not apply because Claimant suffered a cumulative hearing loss while employed by two different employers, not two separate injuries, and the section applies to indemnity benefits based on a claimant's already-lowered earnings.

when it comes to paying Claimant's medical bills.[4] We agree.

The statute specifies that in a hearing loss case, when there is more than one employer responsible for a claimant's hearing loss, each employer shall be liable only for the hearing impairment caused by each employer. If a claim petition against Accurate had been timely filed, Accurate would have been liable for its pro rata share of any medical expenses incurred by Claimant. Because Cerro is only responsible for the hearing loss incurred while Claimant was in its employ, the Board did not err in modifying the WCJ's order and determining that Cerro was only responsible for 26.61% of Claimant's related medical expenses representing that portion of Claimant's hearing loss for which it was responsible.

Accordingly, the order of the Board is affirmed.

### *ORDER*

AND NOW, this 15th day of September, 2011, the order of the Workers' Compensation Appeal Board, dated February 9, 2011, at No. A–09–0169, is affirmed.

---

**4.** Cerro also argues that we should rely on *Berwick Industries v. Workers'. Compensation Appeal Board (Spaid)*, 537 Pa. 326, 643 A.2d 1066 (1994), for the proposition that it does not have to pay any medical benefits because Claimant failed to timely file his claim against Accurate which the WCJ found was time barred. Cerro contends that because our Supreme Court in *Spaid* held that the "statute of repose" found in Section 315 of the Act, 77 P.S. § 602 (relating to statutes of limitations) is similar to Section 306(c)(8)(viii), 77 P.S. § 513(8)(viii) at issue here, Claimant's claim for medical expenses under Section 306(f.1) of the Act, 77 P.S. § 531(1) (paying for reasonable medical services) is barred. Cerro states that Section 306(8)(vi) is, in essence, an enactment of this apportionment scheme.

First, we point out that *Spaid* dealt with a claimant who suffered a foot injury. The claimant failed to file a timely claim petition and the issue was whether the claimant was precluded from receiving medical expenses. The Court determined that because the claimant failed to establish the employer's liability for the injury within the established statutory period, to remove claims for medical expenses from the time limitations of Section 315 would be unsound where the legislature could have stated that such was its intent. What Cerro fails to acknowledge is that Claimant timely filed his claim petition against Cerro, making it responsible for and any medical benefits due to hearing loss that Claimant incurred while in its employ.